# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO: **01-7688**

DAVID SOLOMON,

    Plaintiff,

vs.

AVMED, INC. d/b/a AVMED
HEALTH PLAN,

    Defendant.

_____/

**CIV - DIMITROULEAS**

MAGISTRATE JUDGE
JOHNSON

## COMPLAINT

COMES NOW, the Plaintiff, DAVID SOLOMON ("SOLOMON") sues the Defendant,. AVMED, INC. d/b/a AVMED HEALTH PLAN ("AVMED") and alleges:

1. This is an action that arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §101 et. seq. in which the Court's jurisdiction is based upon 29 U.S.C. §1132(e).

2. Venue is proper pursuant to the provisions of 28 U.S.C. §1391(a).

3. Plaintiff, SOLOMON, is a natural person, over the age of 18 years, currently residing at 6500 La Corce Lane, Lake Worth, Florida 33463, and at all times was a third party beneficiary of a contract between the Defendant, AVMED and the Plaintiff's employer, Publix Supermarkets, Inc. ("Employer"). The contract between the Defendant and the Employer was intended primarily for the benefit of the Plaintiff and other employees and dependants as third party beneficiaries.

4. Defendant, AVMED is at all times mentioned here a Florida corporation. AVMED transacts business in Broward County, Florida, including but not limited to, the sale of its health plans, administering health plans, advertising, and other forms of generating marketing and revenue.

### General Allegations

5. As a result of Plaintiff's third party beneficiary relationship to the contract between AVMED and Plaintiff's Employer, Publix Supermarkets, Inc. Plaintiff has an enforceable contract right to the benefits promised by the AVMED contract, a copy of which is annexed hereto and incorporated herein by reference as Plaintiff's Exhibit "1" to be performed by the Defendant, AVMED.

6.     That Plaintiff, SOLOMON is an individual, who weighs approximately 330 pounds and has been diagnosed by several physicians with a medical condition called "morbid obesity".

7.     Morbid obesity is a disease that has been diagnosed, and is treated as any other medical condition.

8.     That morbid obesity is directly linked to coronary artery disease and heart failure, hypertension, adult on-set diabetes, sleep apnea, gastrointestinal complaints, gaul bladder problems, hiatal hernia, venous insufficiency and blood clots, diverticulitis, premature death, arthritis of the knees, hips and spine, and mental illness, including but not limited to depression.

9.     That due to the above medical condition, the Plaintiff sought medical treatment and was recommended to have gastric bypass surgery as a last resort to control his weight.

10.     That after seeing numerous doctors, he met with a Dr. Robert Marema of the Broward Center of Obesity Surgery ("Surgeon").

11.     That after undergoing numerous mental, psychological and physical examinations, it was recommended that the Plaintiff undergo a silastic ring vertical banded roux-en-y gastric bypass. This surgery is generally accepted throughout the country and has been performed successfully on thousands of patients.  In fact, Dr. Marema is a leading expert and surgeon in this field.

12.     That on or about August 28, 2001, AVMED advised Plaintiff and his physician that coverage for a silastic ring vertical banded roux-en-y gastric bypass has been denied.  A true and correct copy of the correspondence denying coverage is attached hereto and incorporated as Exhibit "2"

13.     That on or about October 1, 2001, a final determination was made by the AVMED appeal committee to uphold the denial of coverage for the silastic ring vertical banded roux-en-y gastric bypass surgery.  A true and correct copy of the correspondence upholding the denial of coverage is attached hereto as Exhibit "3".

14.     That in compliance with the terms of the policy issued to Plaintiff's Employer, Plaintiff has exhausted any and all claims, reviews and appeal requirements.  Alternatively, any and all review, appeal, administrative, grievances or complaint procedures are exhausted by law, are violative of Plaintiff's due process rights, refutable or otherwise unlawful, null, void and enforceable.

15.     That at all times material herein, physicians for the Plaintiff complied with all pre-admission procedures of the defendant, AVMED.  The physicians notified AVMED that the surgery was medically necessary to treat Plaintiff's morbid obesity.

-2-

16.    Count I and II of the complaint herein arise out of deprivation by Defendant of rights secured to the Plaintiff under an employee welfare benefit plan herein after described.

17.    Plaintiff asserts against the Defendant a right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and questions of law and fact, common to the parties herein and the respective causes of action hereinafter set forth.

18.    Plaintiff is entitled to certain health insurance benefits under plans in full force and effect and fully applicable to Plaintiff.

19.    Plaintiff has retained the services of undersigned counsel to represent him in this matter, and is obligated to pay her counsel a reasonable attorney's fee.

## COUNT I - DECLARATORY RELIEF

20.    Plaintiff reavers and realleges paragraphs 1 through 19 inclusive, and incorporates the same here as if set forth in full in this cause of action.

21.    Defendant, AVMED issued a Group Health Insurance Benefit Plan to the Plaintiff's Employer, a copy of which is annexed hereto as Exhibit "1".

22.    Plaintiff and/or Employer have paid all premiums due under the policy to Defendant, AVMED, and at all relevant times and have performed all their obligations under the policy. Plaintiff is still employed by the same Employer.

23.    An actual controversy exists between Plaintiff on the one hand and Defendant on the other hand arising out of the events alleged herein. Specifically, Plaintiff contends that Defendant has no legal basis for denying or discontinuing or excluding coverage and/or authorization for the gastric bypass recommended by Plaintiff's physician.

24.    The intended benefits of the aforesaid insurance coverage are an employee benefit plan as defined by ERISA § 3(1); 29 U.S.C. §1002 (1), and is subject to various provisions of that Act, including the enforcement provisions of part five of the Act.

25.    The policy benefits were wrongfully withheld and denied and Plaintiff contends the denial or discontinuation of benefits for this procedure and/or the refusal to reimburse for the procedure is a breach of the Insurance Agreement entered into by Plaintiff's Employer and Defendant, for which practice Defendant should be estopped on the basis of equity; that the practices of Defendant fail to satisfy the minimum requirements of ERISA and are fraudulent, as a

matter of law.  In fact, the Defendant's actions are discriminatory in nature in that they fail to recognize that morbid obesity is in fact a disease that needs to be treated as seriously and any other medical condition.

26.    Plaintiff is informed and believes and based thereon alleges that Defendant has refused to provide coverage for and refused to authorize or approve payment for the necessary procedure despite the fact that Plaintiff required such procedure, as a direct result of a medical disease known as morbid obesity.

27.    That a judicial determination and respective rights and duties of the Plaintiff and the Defendant with regard to the subject policy is both necessary and proper at this time to:

        a)      Determine if Defendant should be required to pay the benefits for the treatment required by the Plaintiff and prescribed by Plaintiff's treating physicians for a gastric bypass surgery; and

        b)      Determine whether Defendant should be barred from modifying, changing or amending medical standards or other standards so as to exclude Plaintiff from coverage.

WHEREFORE, Plaintiff request this Honorable Court:

1.    Plaintiff desires a judicial determination of her rights and duties under the Policy and a Declaration that the Defendant is obligated, under the Policy, to cover Plaintiff and to pay his providers for the cost and expenses incurred in the performance of the acute parametritis drainage procedure; and for a Declaration and Order by the Court that Defendant be required to pay benefits for treatment required by Plaintiff provided explicitly in Defendant's policy of insurance and prescribed by Plaintiff's treating physicians for her morbid obesity.

2.    That Plaintiff further seeks a declaration by this Court that the Defendant be barred from unreasonable and in bad faith modifying, changing or amending medical standards or other standards as to exclude Plaintiff from coverage and for terminating Plaintiff's policy coverage for any reason whatsoever;

3.    That the Court enter an order setting forth that an actual controversy exists between the Plaintiff and Defendant concerning the Plaintiff's right to receive coverage and payment to the providers for the gastric bypass surgery;

4.    Such a determination is necessary and appropriate at this time in order to determine

the Plaintiff's rights under the policy;

5.     That the Court order the Defendant to pay Plaintiff's costs for this action, together with reasonable attorney's fees pursuant to ERISA § 502(g); 29 U.S.C. § 1132(g); and

6.     For such other and further relief as the Court deems just and proper.

## COUNT II - BREACH OF CONTRACT

28.     Plaintiff reavers and realleges paragraphs 1 through 19 inclusive, and incorporates the same here as if set forth in full in this cause of action.

29.     At all times material herein mentioned, Defendant delivered to Plaintiff's employer the terms and conditions of the AVMED Health Plan, a copy of which is attached as Plaintiff's Exhibit "6" as is incorporated herein by reference.

30.     Under the terms of the policy described, Defendant, AVMED insured the Plaintiff as a third party beneficiary against loss due to expenditures, hospitalizations, medical care, other medical expenses incurred by Plaintiff resulting from sickness, disease or accident. Under the terms of the policy, Defendant had a duty to authorize, approve and pay for covered benefits. The duty was intended to benefit Plaintiff as such third party beneficiary.

31.     Performance of the silastic ring vertical banded roux-en-y gastric bypass procedure was medically necessary and has been prescribed by Plaintiff's treating physician.

32.     Plaintiff thus qualified for coverage for the gastric bypass pursuant to the contract of insurance issued by the Defendant to Plaintiff's employee, as such procedure was medically and surgically necessary to the health, welfare and well being of the Plaintiff.

33.     Plaintiff has arbitrarily and capriciously breached the obligations set forth in the Policy issued by Defendant.

34.     The proximate result of this unreasonable and bad faith conduct of the Defendant has caused the Plaintiff to suffer and will continue to suffer in the future damages under the policy and other economic and consequential damages for a total amount to be proven at the time of trial.

35.     Plaintiff has demanded that the Defendant comply with the terms and the provisions of the policy of insurance. But Defendant has failed, neglected or refused to do so.

36.     Plaintiff has retained the services of undersigned counsel to represent him in this matter and is obligated to pay his counsel a reasonable attorney's fee.

WHEREFORE, Plaintiff requests judgment against the Defendant for damages, interest, costs and a reasonable attorney's fee, pursuant to ERISA § 502(g); 29 U.S.C. § 1132 (g), as there is no justiciable issue or fact or law herein, and for such other and further relief as this Court deems just and proper.

Dated: October 26, 2001

SALOMON LAW CENTER
Attorney for Plaintiff
2770 University Drive
The Walk at University Drive
Coral Springs, Florida 33065
Tel: (954) 346-3350
Fax: (954) 755-5232

By: _Scott Salomon_
   Scott A. Salomon

GIOVANNI NICOSIA, P.A.
8100 North University Drive, Suite 102
Ft. Lauderdale, Florida 33321-1717
Tel: (954) 752-1213
Fax: (954) 752-5299

By:_____
   Giovanni Nicosia
   Florida Bar No. 144721



# Group Medical and Hospital Service Contract

Certificate of Coverage

AvMed

# TABLE OF CONTENTS

SERVICE AREAS ............................................................................ i

I.     GENERAL ......................................................................... 1

II.    INTERPRETATION ......................................................... 1

III.   DEFINITIONS ................................................................. 2

IV.    ELIGIBILITY ................................................................... 7

V.     ENROLLMENT ................................................................ 9

VI.    EFFECTIVE DATE OF MEMBERSHIP ........................... 10

VII.   MONTHLY PAYMENTS AND COPAYMENTS .............. 10

VIII.  CONVERSION ................................................................. 11

IX.    TERMINATION ............................................................... 13

X.     SCHEDULE OF BASIC BENEFITS ................................ 17

XI.    LIMITATIONS OF BASIC BENEFITS ............................ 24

XII.   EXCLUSIONS FROM BASIC BENEFITS ....................... 25

XIII.  COORDINATION OF BENEFITS .................................. 29

XIV.   REIMBURSEMENT ....................................................... 32

XV.    DISCLAIMER OF LIABILITY ........................................ 32

XVI.   GRIEVANCE PROCEDURE ........................................... 33

XVII.  MISCELLANEOUS ......................................................... 36

AV-G100-2001
MP-2153 (9/01)

**AvMed CORPORATE OFFICE**
9400 SO. DADELAND BLVD.
P.O. BOX 569004
MIAMI, FL 33256-9004

## SERVICE AREAS

**MIAMI**
9400 South Dadeland Boulevard
Post Office Box 569004
Miami, Florida 33256-9004

(305) 671-5437
(800) 432-6676

**GAINESVILLE**
4300 N. W. 89th Boulevard
Post Office Box 749
Gainesville, Florida 32606-0749

(352) 372-8400
(800) 346-0231

**FT. LAUDERDALE**
13450 W. Sunrise Blvd.
Suite 370
Sunrise, Florida 33323-2947

(954) 462-2520
(800) 368-9189

**ORLANDO**
541 South Orlando Avenue
Suite 205
Maitland, Florida 32751

(407) 539-0007
(800) 227-4848

**WEST PALM BEACH**
3300 PGA Boulevard
Suite 400
Palm Beach Gardens, Florida 33410

(561) 622-0413
(800) 891-7768

**TAMPA BAY**
1511 North Westshore Boulevard,
Suite 700
Tampa, Florida 33607

(813) 281-5650
(800) 257-2273

**JACKSONVILLE**
1300 Riverplace Boulevard, Suite 200
Jacksonville, Florida 32207

(904) 858-1300
(800) 227-4184

**TALLAHASSEE**
P.O. Box 15219
Tallahassee, Florida 32317-5219

(850) 894-2004
(800) 677-8831

## AVMED MEMBER SERVICES - ALL AREAS
### 1-800-88 AVMED
### (1-800-882-8633)

i

AV-G100-2001

**AvMed, INC.**
**D/B/A AvMed HEALTH PLAN**

**GROUP MEDICAL AND HOSPITAL SERVICE CONTRACT**

IN CONSIDERATION of the payment of monthly prepayment subscription charges as provided herein and of mutual promises and benefits hereinafter described, AvMed, Inc., a Florida corporation, d/b/a AvMed Health Plan, (hereinafter referred to as "Health Plan"), and

(hereinafter referred to as "Subscribing Group") agree as follows:

## I. GENERAL

The Subscribing Group engages Health Plan to arrange for the provision of Medical Services or benefits which are Medically Necessary for the diagnosis and treatment of Members of the Subscribing Group through a network of contracted independent Physicians and Hospitals and other health care providers. Said services are provided in accordance with the covenants and conditions contained in this Contract. Health Plan shall rely upon the statements of the Subscriber in his application in providing coverage and benefits hereunder.

This Contract is not intended to and does not cover or provide any Medical Services or benefits which are not Medically Necessary for the diagnosis and treatment of the Member. The determination as to which services are Medically Necessary shall be made by Health Plan subject to the terms and conditions of this Contract.

Health Plan reserves the right to make changes in coverage criteria for covered products and services. Coverage criteria are medical and pharmaceutical protocols used to determine payment of products and services and are based on independent clinical practice guidelines and standards of care established by government agencies and medical/pharmaceutical societies.

The medical and Hospital Services covered by this Contract shall be provided without regard to the race, color, religion, physical handicap, or national origin of the Member in the diagnosis and treatment of patients; in the use of equipment and other facilities; or in the assignment of personnel to provide services, pursuant to the provisions of Title VI of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990.

## II. INTERPRETATION

In order to provide the advantages of medical and Hospital facilities and of the Participating Providers, Health Plan operates on a direct service rather than indemnity basis. The interpretation of this Contract shall be guided by the direct service nature of the Health Plan's program and the definitions and other provisions contained herein.

1

AV-G100-2001

## III. DEFINITIONS

As used in this Contract, each of the following terms shall have the meaning indicated:

3.01    **"AvMed, Inc."** otherwise known as "Health Plan" means a private, not for profit Florida corporation, state licensed as a health maintenance organization under Chapter 641, <u>Florida Statutes</u> for the purpose of providing or arranging for prepaid health care services to its Members under the terms and conditions set forth in this Contract.

3.02    **"Contract"** means this Group Medical and Hospital Service Contract AV-G100-2000 which may at times be referred to as "Group Contract" and all applications, rate letters, face sheets, riders, amendments, addenda, exhibits, supplemental agreements, and schedules which are or may be incorporated in this Contract from time to time.

3.03    **"Contract Year"** means the period of twelve (12) consecutive months commencing on the effective date of this Contract.

3.04    **"Conversion Contract"** means an individual Member or Subscriber Contract which shall be available to continue coverage (as provided for therein) of the Subscriber or the Dependent of the Subscriber upon termination of the Subscribing Group Contract as provided in Part VIII of this Contract, and shall at times be referred to as the "Individual" or "Conversion Contract."

3.05    **"Copayment"** means the charge, in addition to the prepaid premium charges, which the covered Subscriber is required to pay at the time certain health services are provided under this Contract. The covered Subscriber/Member is responsible for the payment of any Copayment charges directly to the provider of the health services at the time of service.

3.06    **"Custodial Care"** means services and supplies that are furnished mainly to train or assist in the activities of daily living, such as bathing, feeding, dressing, walking, and taking oral medicines. "Custodial Care" also means services and supplies that can be safely and adequately provided by persons other than licensed health care professionals, such as dressing changes and catheter care or that ambulatory patients customarily provide for themselves, such as ostomy care, measuring and recording urine and blood sugar levels, and administering insulin.

3.07    **"Dental Care"** means dental x-rays, examinations and treatment of the teeth or structures directly supporting the teeth that are customarily provided by dentists, including orthodontics, reconstructive jaw surgery, casts, splints, and services for dental malocclusion.

3.08    **"Dependent"** means any Member of a Subscriber's family who meets all applicable requirements of Part IV and is enrolled hereunder and for whom the prepayment required by Part VII has actually been received by Health Plan.

2

AV-G100-2001

3.09   **"Durable Medical Equipment (DME), Orthotics, and/or Prosthetics"**   Coverage for DME, Orthotics and Prosthetics is limited as outlined in Section(s) 10.18.01, 10.18.02 and 10.19 subject to specific Limitations and Exclusions as listed in Part XII. The determination of whether a covered item will be paid under the DME, Orthotics or Prosthetics benefit will be based upon its classification as defined by the Health Care Financing Administration.

3.10   **"Emergency Medical Condition"** means:

    3.10.01   A medical condition manifesting itself by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

        a)   Serious jeopardy to the health of a patient, including a pregnant woman or fetus.

        b)   Serious impairment to bodily functions.

        c)   Serious dysfunction of any bodily organ or part.

    3.10.02   With respect to a pregnant woman:

        a)   That there is inadequate time to effect safe transfer to another Hospital prior to delivery;

        b)   That a transfer may pose a threat to the health and safety of the patient or fetus; or

        c)   That there is evidence of the onset and persistence of uterine contractions or rupture of the membranes.

    3.10.03   *Examples of Emergency Medical Conditions include, but are not limited to:* heart attack, stroke, massive internal or external bleeding, fractured limbs, or severe trauma.

3.11   **"Emergency Medical Services and Care"** means medical screening, examination, and evaluation by a Physician, or, to the extent permitted by applicable law, by other appropriate personnel under the supervision of a Physician, to determine if an Emergency Medical Condition exists and, if it does, the care, treatment, or surgery for a covered service by a Physician necessary to relieve or eliminate the Emergency Medical Condition within the service capability of the Hospital.

    3.11.01   In-Area Emergency does not include elective or routine care, care of minor illness, or care that can reasonably be sought and obtained from the Member's Primary Care Physician. The determination as to whether or not an illness or injury constitutes an emergency shall be made by Health Plan and may be made retrospectively based upon all information known at the time patient was present for treatment.

    3.11.02   Out-of-Area Emergency does not include care for conditions for which a Member could reasonably have foreseen the need of such care before leaving the Service Area or care that could safely be delayed until prompt return to the Service Area. The determination as to whether or not an illness or injury constitutes an emergency shall

3

be made by Health Plan and may be made retrospectively based upon all information known at the time patient was present for treatment.

3.12    **"Exclusion"** means any provision of this Contract whereby coverage for a specific hazard or condition is entirely eliminated.

3.13    **"Full-Time Student"** means one who is attending a recognized and/or accredited college, university, vocational, or secondary school and is carrying sufficient credits to qualify as a Full-Time Student in accordance with the requirements of the school. (See Subsection 4.02.02(f)).

3.14    **"Group Health Insurance"** (for purposes of Part XIII) means that form of health insurance covering groups of persons under a master Group Health Insurance policy issued to any one of the groups listed in Sections 627.552 (employee groups), 627.553 (debtor groups), 627.554 (labor union and association groups), and 627.5565 (additional groups); Florida Statutes.

    3.14.01    The terms "amount of insurance" and "insurance" include the benefits provided under a plan of self-insurance.

    3.14.02    The term "insurer" includes any person, entity, or governmental unit providing a plan of self-insurance.

    3.14.03    The terms "policy," "insurance policy," "health insurance policy," and "Group Health Insurance policy" include plans of self-insurance providing health insurance benefits.

3.15    **"Health Plan"** means AvMed, Inc., a not for profit Florida corporation, d/b/a AvMed Health Plan, which has been certified as a health maintenance organization by the Department of Insurance of the State of Florida to provide or arrange for provision by the plan of prepaid health benefits and services covered by this Contract.

3.16    **"Health Professionals"** means Physicians, osteopaths, podiatrists, chiropractors, Physician assistants, nurses, social workers, pharmacists, optometrists, clinical psychologists, nutritionists, occupational therapists, physical therapists, and other professionals engaged in the delivery of health care services who are licensed and practice under an institutional license, individual practice association, or other authority consistent with state law and who are Participating Providers of Health Plan.

3.17    **"Home Health Care Services"** means services that are provided for a Member who is unable to receive medical care on an ambulatory outpatient basis and does not require confinement in a Hospital or Other Health Care Facility. Such services include, but are not limited to, the services of professional visiting nurses or other health care personnel for services covered under this Contract.

3.18    **"Hospice"** means a public agency or private organization which is duly licensed by the State to provide Hospice services and with whom Health Plan has a current provider agreement. Such licensed entity must be principally engaged in providing pain relief, symptom management, and supportive services to terminally ill Members.

3.19    **"Hospital"** means any general acute care facility which is licensed by the state and with which Health Plan has contracted or established arrangements for inpatient Hospital Services and/or emergency services, and shall at times be referred to as "Plan Hospital."

4

AV-G100-2001

3.20   **"Hospital Services"** (except as expressly limited or excluded by this Contract) means those services for registered bed patients which are:

    3.20.01   Generally and customarily provided by acute care general Hospitals within the Service Area;

    3.20.02   Performed, prescribed, or directed by Plan Providers; and

    3.20.03   Medically Necessary for conditions which cannot be adequately treated in Other Health Care Facilities or with Home Health Care Services or on an ambulatory basis.

3.21   **"Hospitalist/Admitting Panelist"** means a Physician who specializes in treating inpatients and who may coordinate a Member's health care when the Member has been admitted for a Medically Necessary procedure or treatment at a Hospital.

3.22   **"Limitation"** means any provision other than an Exclusion which restricts coverage under this Contract.

3.23   **"Master Application"** means the Subscribing Group application form entitled "Master Application" which becomes a part of the Contract when the Master Application has been completed and executed by the Subscribing Group and Health P an.

3.24   **"Medically Necessary"** means the use of any appropriate medical treatment, service, equipment, and/or supply as provided by a Hospital, skilled nursing facility, Physician, or other provider which is necessary for the diagnosis, care, and/or treatment of a Member's illness or injury, and which is:

    3.24.01   Consistent with the symptom, diagnosis, and treatment of the Member's condition;

    3.24.02   The most appropriate level of supply and/or service for the diagnosis and treatment of the Member's condition;

    3.24.03   In accordance with standards of acceptable community practice;

    3.24.04   Not primarily intended for the personal comfort or convenience of the Member, the Member's family, the Physician, or other health care provider;

    3.24.05   Approved by the appropriate medical body or health care specialty involved as effective, appropriate, and essential for the care and treatment of the Member's condition;

    3.24.06   Prescribed, directed, authorized, and/or rendered by a participating or authorized provider, except in the case of an emergency; and

    3.24.07   Not experimental or investigational.

3.25   **"Medical Office"** means any outpatient facility or Physician's office in the Service Area utilized by a Participating Provider.

5

AV-G100-2001

3.26  **"Medical Services"** (except as limited or excluded by this Contract) means those professional services of Physicians and other Health Professionals including medical, surgical, diagnostic, therapeutic, and preventive services which are:

    3.26.01    Generally and customarily provided in the Service Area;

    3.26.02    Performed, prescribed, or directed by Participating Providers; and

    3.26.03    Medically Necessary (except for preventive services as stated herein) for the diagnosis and treatment of injury or illness.

3.27  **"Member"** means any Subscriber or Dependent, as described in Part III, Sections 3.08 and 3.35 of this Contract, and shall at times be referred to as "Plan Member."

3.28  **"Non-Participating Provider"** means any Health Professional or group of Health Professionals or Hospital, Medical Office, or Other Health Care Facility with whom Health Plan has neither made arrangements nor contracted to render the professional health services set forth herein, and shall at times be referred to as "Non-Plan Provider."

3.29  **"Other Health Care Facility(ies)"** means any licensed facility, other than Ventilator Dependent Care Units and acute care Hospitals, providing inpatient services such as skilled nursing care or rehabilitative services for which Health Plan has contracted or established arrangements for providing these services to Members.

3.30  **"Participating Provider"** means any Health Professional or group of Health Professionals or Hospital, Medical Office, or Other Health Care Facility with whom Health Plan has made arrangements or contracted to render the professional health services set forth herein, and shall at times be referred to as "Plan Provider."

3.31  **"Physician"** means any participating Physician licensed under Chapter 458 (physician), 459 (osteopath), 460 (chiropractor) or 461 (podiatrist), <u>Florida Statutes</u>, and shall at times be referred to as "Plan Physician."  "Attending Physician" means the Participating Provider Physician primarily responsible for the care of a Member with respect to any particular injury or illness.

3.32  **"Primary Care Physician"** means a Participating Provider Physician engaged in family practice, pediatrics, internal medicine, obstetrics/gynecology, osteopathy, or any specialty Physician from time to time designated by Health Plan as "Primary Care Physician" in Health Plan's current list of Physicians and Hospitals.

3.33  **"Service Area"** means those counties in the State of Florida where AvMed has been approved to conduct business by the Florida Department of Insurance.

3.34  **"Specialty Health Care Professional"** means a Health Professional other than the Member's chosen Primary Care Physician.

3.35  **"Subscriber"** means a person who meets all applicable requirements of Part IV, enrolls in Health Plan, and for whom the premium prepayment required by Part VII has actually been received by Health Plan.

6

3.36   **"Subscriber(ing) Group"** means an employer who negotiates and agrees to contract for the health services and benefits provided herein for its eligible employees, and shall at times be referred to herein as "Employer" or "Contract Holder."

3.37   **"Total Disability"** means a totally disabling condition resulting from an illness or injury which prevents the Member or Subscriber from engaging in any employment or occupation for which he may otherwise become qualified by reason of education, training, or experience, and for which the Member or Subscriber is under the regular care of a Physician.

3.38   **"Utilization Management Program"** means those procedures adopted by Health Plan to assure that the supplies and services provided to Members are Medically Necessary. These include, but are not limited to: (1) pre-authorization for specialty referrals, Hospital admissions (except emergencies), outpatient surgery, and certain outpatient diagnostic tests and procedures; (2) concurrent review of all patients hospitalized in acute care, psychiatric, rehabilitation, and skilled nursing facilities, including on-site review when appropriate; (3) case management for all inpatients who need continued care in an alternative setting (such as homecare or a skilled nursing facility) and for outpatients when deemed appropriate.

3.39   **"Ventilator Dependent Care Unit"** means any facility which provides transitional care to patients other than acute Hospital care, including all types of facilities known as sub-acute care units, ventilator dependent units, alternative care units, sub-acute care centers, and all other like facilities whether maintained in a free standing facility or maintained in a Hospital setting. These units specifically do not include facilities known as skilled nursing facilities, rehabilitation facilities, or any other type of facility providing services similar to that of a skilled nursing facility or a rehabilitation facility. Coverage is limited to 150 days per episode.

## IV. ELIGIBILITY

4.01   To be eligible to enroll as a Subscriber, a person must be:

    4.01.01   An employee of the Subscribing Group who works the required number of hours per week as set forth in the Master Application for this Contract and either resides in the Service Area or in a county contiguous to the Service Area. In this instance, the employee will also be required to complete a Waiver of Service Area form;

    4.01.02   Employed for the period of time required for eligibility as set forth in the Master Application; and

    4.01.03   Entitled on his own behalf to participate in the medical and Hospital care benefits arranged by the Subscribing Group under this Contract.

4.02   To be eligible to enroll as a Dependent, a person must reside in the Service Area (except for "f" below; also see Section 6.03) and must be:

    4.02.01   the spouse of the Subscriber; a new spouse must be enrolled within thirty-one (31) days after marriage in order to be covered; or

    4.02.02   a child of the Subscriber, or a child of a covered Dependent of the Subscriber, provided that the following conditions apply:

7

AV-G100-2001

a)  The child is the natural child or stepchild of the Subscriber; a legally adopted child in the custody of the Subscriber from the time of placement in the home (written evidence of adoption must be furnished to Health Plan upon request); a child for whom the Subscriber is legal guardian; or a newborn child of a covered Dependent of the Subscriber (such coverage terminates 18 months after the birth of the newborn child);

b)  The child resides with the Subscriber (except for "f" and "h" below);

c)  The child is under the age of 19 (except for "f" and "g" below or Section 4.04 below);

d)  The child is principally dependent upon the Subscriber for maintenance and support and is not regularly employed by one or more employers for a total of thirty (30) hours or more per week;

e)  The child is not married;

f)  The child is age 19 or over but under the age of 23, or other limiting age as specified by the parties in a fully executed addendum to this Contract, and is enrolled as a Full-Time Student (See Section 3.13) at a college, university, vocational, or secondary school.  Subscriber is responsible for notifying Health Plan when full-time attendance commences or terminates, and coverage shall commence or terminate upon such notification.  Ceasing of coverage will be retroactively applied if Health Plan is not notified.  Subscriber agrees to provide documentation of Full-Time Student status upon request of Health Plan;

g)  The child is age 19 or over and is wholly dependent on the Subscriber due to mental retardation or physical handicap.  (See Section 4.04)

h)  In the event an eligible Dependent child does not reside with the Subscriber, coverage will be extended where the Subscriber is obligated to provide medical care by court order provided the eligible Dependent resides within the Service Area.

i)  In the case of a newborn child, Health Plan should be notified in writing prior to the scheduled delivery date of the Subscriber's intention to enroll the newborn child, but such notice shall not be later than thirty-one (31) days after the birth. If timely notice is provided, no additional premium will be charged for the additional coverage of the newborn during the thirty-one (31) day period following the birth of the child.  If timely notice is not provided, the additional premium for the additional coverage of the newborn child will be charged from the child's date of birth.  If notice is not provided within 60 days of the birth, the child may not be enrolled until the next open enrollment period of the Subscribing Group.

All services applicable for covered Dependent children under this Contract shall be provided to an enrolled newborn child of the Subscriber or to the enrolled newborn child of a covered Dependent of the Subscriber or to the newborn adopted child of the Subscriber provided that a written agreement to adopt such

8

AV-G100-2001

child has been entered into (prior to the birth of the child) from the moment of birth (as provided in Part X, Section 10.10). In the case of the newborn adopted child, however, coverage shall not be effective if the child is not ultimately placed in the Subscriber's residence in compliance with Florida law.

Coverage for the newborn child of a covered Dependent of the Subscriber (other than the spouse of the Subscriber) shall terminate eighteen (18) months after the birth of the newborn child.

4.03    No person is eligible to enroll hereunder who has had his coverage previously terminated under Part IX, Subsection 9.01.05, except with the written approval of Health Plan.

4.04    Attainment of the limiting age by a Dependent child shall not operate to exclude from or terminate the coverage of such child nor shall coverage prevent the enrollment of a child while such child is and continues to be both:

4.04.01    Incapable of self-sustaining employment by reason of mental retardation or physical handicap; and

4.04.02    Chiefly dependent upon the Subscriber for support and maintenance, provided proof of such incapacity and dependency is furnished to Health Plan by Subscriber within thirty-one (31) days of the child's attainment of the limiting age and subsequently as may be required by Health Plan, but not more frequently than annually after the two-year period following the child's attainment of the limiting age.

4.05    During the term of this Contract, no changes in the Subscribing Group eligibility or requirements of participation shall be permitted to affect eligibility or enrollment under this Contract unless such change is agreed to by Health Plan.

### V. ENROLLMENT

5.01    Prior to the effective date of this Contract and at a proper time prior to each anniversary thereof, Health Plan may allow an open enrollment period of thirty-one (31) days, in which any eligible Subscriber on behalf of himself and his Dependents may elect to enroll in Health Plan.

5.02    Except as provided for newborns, eligible Subscribers and Dependents who meet the requirements of Part IV, Sections 4.01 and 4.02 must enroll within thirty-one (31) days after becoming eligible by submitting application forms acceptable to or provided by Health Plan; otherwise, the eligible Subscribers and Dependents may not enroll until the next open enrollment period of Subscribing Group.

5.03    Special Enrollment Periods.  An eligible Subscriber or Dependent may request to enroll under Health Plan outside of the initial enrollment and Annual Open Enrollment Periods if that Individual, within the immediately preceding thirty-one (31) days, was covered under another employer health benefit plan as an employee or Dependent at the time he was initially eligible to enroll for coverage under Health Plan, and:

5.03.01    Demonstrates that he or his Dependent has lost coverage due to a loss of eligibility under the prior plan as a result of: legal separation, divorce, death, termination of

9

AV-G100-2001

employment, reduction in the number of hours of employment, or termination of coverage due to the termination of employer contributions toward such coverage;

5.03.02   Requests enrollment within thirty-one (31) days after the termination of coverage under another employer health benefit plan; and

5.03.03   Provides proof of continuous coverage under the other employer health benefit plan.

5.04   The eligibility requirements set forth in Part IV shall at all times control and no coverage contrary thereto shall be effective.   Coverage shall not be implied due to clerical or administrative errors if such coverage would be contrary to Part IV. (Also see Section 17.11)

5.05   This Contract, at the sole option of Health Plan, will not be accepted if at time of initial offering to Subscribing Group or following re-enrollment the total enrollment does not result in a predetermined minimum enrollment as established by Health Plan. The required minimum group enrollment is included in the rate letter submitted to Subscribing Group.

## VI. EFFECTIVE DATE OF MEMBERSHIP

Subject to the payment of applicable monthly membership charges set forth in Part VII and to the provisions of this Contract, coverage under this Contract shall become effective on the following dates:

6.01   Eligible Subscribers and Dependents who enroll during the open enrollment period will be covered Members as of the effective date of this Contract or subsequent anniversary thereof.

6.02   Subscribers and/or their Dependents who become eligible to enroll after the open enrollment period of the Subscribing Group and who enroll as provided in Section 5.02 will become effective from the date of eligibility.

6.03   If a Subscriber acquires an eligible Dependent, the Dependent will be covered from the date of eligibility upon Health Plan's receipt of the required written notice and premium not later than thirty-one (31) days after the date the Dependent first became eligible (except in the case of a newborn child as described in Subsection 4.02.02 (i)); otherwise the Dependent may not be enrolled until the next open enrollment period of the Subscribing Group.

6.04   Coverage for the newborn child of the Subscriber or the newborn child of the Subscriber's covered Dependent is effective at birth if Subsection 4.02.02(i) and Section 6.03 are complied with.

## VII.  MONTHLY PAYMENTS AND COPAYMENTS

7.01   On or before the first day of each month for which coverage is sought, Subscriber Group or its designated agent shall remit to Health Plan, on behalf of each Subscriber and his Dependents, the monthly premium based on the rate letter and Master Application.  Only Members for whom the

AV-G100-2001

stipulated payment is actually received by Health Plan shall be entitled to the health services covered under this Contract and then only for the period for which such payment is applicable. Failure of the Subscriber Group to pay premiums for the group by the first of the month and not later than the end of the grace period (as provided in Section 7.02) shall result in retroactive termination of the group, effective at 12:00 a.m. (midnight) on the last day of the month for which premium was paid, unless the payment of premiums has otherwise been contractually adjusted and specified by the parties in a fully executed addendum to this Contract.   An additional charge will apply to all late premium payments. (See Section 17.15)

7.02    Grace Period. This Contract has a ten (10) day grace period.  This provision means that if any required premium is not paid on or before the date it is due, it must be paid during the following grace period.  During the grace period, the Contract will stay in force.  However, if payment is not received by the last day of the grace period, termination of this Contract for nonpayment of premium will be retroactive to 12:00 a.m. (midnight) on the last day of the month for which premium was paid.  Note:  Certain provisions in Section 7.01 may apply if the parties have executed an addendum affecting premium payments.

7.03    Maximum Copayments.  Total annual Copayments are limited to a maximum of $1,500.00 for an individual or $3,000.00 for a couple or family.  It is the responsibility of the Subscriber/Member to retain receipts and to notify and document to the satisfaction of Health Plan when either of the Copayment limits has been reached.

7.04    Member shall pay premiums, applicable supplemental charges, or Copayments as provided in this Contract.  If he fails to do so, upon ten (10) days written notice from Plan to Member, the Member's rights hereunder shall be terminated. Consideration for reinstatement with the Plan shall require a new application, and any re-enrollment shall be at the sole discretion of Health Plan and shall not be retroactive.

7.05    Refund of premiums paid to Health Plan by the Subscriber Group for any Member after the date on which that Member's eligibility ceased or the Member was terminated shall be limited to the total excess premiums paid up to a maximum of sixty (60) days from the date of such ineligibility or termination, provided there are no claims incurred subsequent to the effective date of termination.

No retroactive terminations of Members will be made beyond 60 days from notification of the terminating event.

7.06    In the event of the retroactive termination of an individual Member (as described in Subsections 9.01.02 and 9.02.01 of this Contract), Health Plan shall not be responsible for medical expenses incurred by Health Plan in providing benefits to the Member under the terms of this Contract after the effective date of termination (due to the Subscriber Group's  nonpayment of premiums or failure to timely notify the Plan of Member ineligibility).  At the discretion of Health Plan based on the facts available to Health Plan at the time, Health Plan may pursue either the Subscriber Group or the Member for payment.

## VIII. CONVERSION

8.01    A Subscriber or covered Dependent whose coverage under the Subscriber Group Contract has been terminated for any reason, including discontinuance of the Subscriber Group Contract in its

11

AV-G100-2001

entirety or with respect to a covered class, and who has been continuously covered under the Subscriber Group Contract, and under any group health maintenance Contract providing similar benefits which it replaces, for at least three (3) months immediately prior to termination, shall be entitled, subject to the exceptions contained herein, to have issued to him or her a Conversion Contract (See Section 3.04), unless there is a replacement of discontinued group coverage by similar group coverage within thirty-one (31) days.

8.01.01   The converting Subscriber and each of the eligible Dependents of the Subscriber who are converting must be Members of the Plan in good standing on the date when their coverage terminates under this Group Contract, and all such Subscribers and Dependents, after complying with Subsection 8.01.02 below, shall be covered under the Individual Conversion Contract.

8.01.02   A completed status change form requesting conversion shall be sent to Health Plan or its designated administrator with the first applicable premium and shall be received by Health Plan or its designated administrator not later than sixty-three (63) days after the date of termination of this Group Contract.

8.01.03   Dependents may not convert without the Subscriber except:

a)   In the event of the death of the Subscriber, Dependents are permitted an automatic conversion privilege and must comply with Subsection 8.01.02 above.

b)   A spouse whose coverage would terminate or a spouse and children whose coverage would otherwise terminate at the same time or a child with respect to himself, by reason of ceasing to be a qualified family member, may convert and must comply with Subsection 8.01.02 above.

c)   A former spouse whose coverage would otherwise terminate because of annulment or dissolution of marriage may convert if the former spouse is dependent for financial support.   The former spouse must comply with Subsection 8.01.02 above and must provide written evidence of financial dependence upon request of Health Plan.

8.01.04   Payment for health care services rendered to a Member after termination and prior to conversion shall be the responsibility of the Member.   When the conversion application has been timely completed (within sixty-three (63) days after termination of the Group Contract) and the first premium due has been paid, Health Plan shall reimburse the Subscriber for any payment made by the Subscriber for covered Medical Services under the converted Contract.

8.01.05   A new Conversion Contract is established upon application and payment of premium on the day following the Member's termination from group coverage (due to ineligibility under the Group Contract) and continues through the end of the calendar year. The Contract Year, upon renewal, shall be the calendar year.

8.02   Individual Conversion Contracts may not include supplemental benefits, notwithstanding the supplemental benefits included under this Subscriber Group Contract, and may in other respects, as determined by Health Plan, differ from this Group Contract.

12

8.03    The conversion privilege will not apply to a Subscriber or covered Dependent if termination of his coverage under this Contract occurred for any of the following reasons:

8.03.01    Failure to pay any required premium or contribution unless such nonpayment of premium was due to acts of an employer or person other than the individual;

8.03.02    Replacement of any discontinued group coverage by similar group coverage within thirty-one (31) days;

8.03.03    Fraud or material misrepresentation in applying for any benefits under this Contract; (See Subsection 9.01.05)

8.03.04    Willful and knowing misuse of Health Plan's membership identification card by the Subscriber;

8.03.05    Willfully and knowingly furnishing incorrect or incomplete information to Health Plan for the purpose of fraudulently obtaining coverage or benefits from Health Plan; or

8.03.06    Termination from coverage under this Contract in accordance with Subsection 9.01.05.

8.04    Conversion After Continuation Coverage.   When continuation coverage as provided under the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA) expires, the Subscriber or covered Dependent may be eligible for conversion coverage and may apply by completing an application for an individual Conversion Contract, subject to the conditions described in Part VIII, above.  The eligible Subscriber or Dependent must send a completed application and the applicable premium payment, postmarked not later than sixty-three (63) days after the termination of COBRA coverage, directly to:

AvMed Health Plan
Accounts Receivable Department
Suite 510
9400 South Dadeland Blvd.
Miami, Florida 33156

The Subscriber or Dependent may obtain an application form and a statement of current premium rates for the individual Conversion Contract by calling the Service Area office.

It is the responsibility of the Subscribing Group to notify Subscriber of Subscriber's rights under COBRA.  For any specific questions concerning COBRA, contact the Subscribing Group.

## IX. TERMINATION

All rights and benefits under this Contract shall cease as of the effective date of termination, unless otherwise provided herein.

AV-G100-2001

This Contract shall continue in effect for one year from the effective date hereof and may be renewed from year to year thereafter, subject to the following termination provisions. All rights to benefits under this Contract shall cease at 12:00 a.m. (midnight) on the effective date of termination.

9.01    Reasons for Termination:

    9.01.01    <u>Loss of Eligibility</u> - Subject to the conversion rights under Section 8.04:

        a)  Upon a loss of the Subscriber's eligibility as defined in Part IV, including but not limited to the Subscriber's permanent relocation outside Health Plan Service Area, coverage shall automatically terminate on the last day of the month for which the monthly premium was paid unless otherwise agreed to by the parties.

        b)  Coverage for all Dependents shall automatically terminate on the last day of the month for which the monthly premium was paid upon a loss of the Subscriber's eligibility, as defined in Part IV.

    9.01.02    <u>Failure to Make Premium Payment</u> - Upon failure of the Subscriber Group to make payment of the monthly premiums provided in Part VII within ten (10) days following the due date specified herein, benefits hereunder shall terminate, for all Subscribers and any Dependents for whom such payment has not been received, at 12:00 a.m. (midnight), on the last day of the month for which the monthly premium was paid.

        Upon failure of the Subscriber to make payment of any premium contributions or applicable supplemental charges required by Section 7.04 of this Contract, coverage shall automatically terminate for the Subscriber and all Dependents on the tenth day after written notice from Health Plan.

        AvMed Health Plan, regarding cancellation or non-renewal of this coverage, may retroactively cancel the policy to the date for which the employer's premiums have been paid when AvMed provides notice of cancellation or non-renewal to the Subscribing Group prior to 45 days after the date premium was due. AvMed will include a reason for the Contract termination in its written notification to the Subscribing Group. The Subscribing Group will forward such notification to all Subscribers when AvMed has notified the Subscribing Group of the cancellation or non-renewal, and AvMed is deemed to have complied with its notification requirements by providing said notice to the Subscribing Group.

    9.01.03    <u>Termination of Group Contract by Subscribing Group</u> - Group may terminate this Group Contract on the anniversary date by giving written notice to Health Plan fifteen (15) days prior to Contract anniversary date. In such event, benefits hereunder shall terminate for all Members at 12:00 a.m. (midnight) on Contract expiration date.

    9.01.04    <u>Termination of Group Contract by Health Plan</u> - Health Plan may non-renew or discontinue this Group Contract based on one or more of the following conditions. In such event, benefits hereunder shall terminate for all Members at 12:00 a.m. (midnight) on Contract expiration date as described below.

AV-G100-2001

a) Subscribing Group has failed to pay premiums or contributions in accordance with the terms of this Contract or Health Plan has not received timely premium payments (See Part VII, Monthly Payments and Copayments and Subsection 9.01.02). Termination of coverage will be effective on the last day of the month for which payments were received by Health Plan.

b) Subscribing Group has performed an act or practice that constitutes fraud or made an intentional misrepresentation of material fact under the terms of this Contract. This will result in immediate termination of Subscribing Group.

c) Subscribing Group has failed to comply with a material provision of the plan which relates to rules for employer contributions or group participation. Termination will be effective upon forty-five (45) days written notice from Health Plan to Subscribing Group.

d) There is no longer any enrollee in connection with the plan who lives, resides, or works in Health Plan's Service Area. Termination of coverage will be effective on the last day of the month for which payments were received by Health Plan.

e) Health Plan ceases to offer coverage in the applicable market. Termination will be effective upon one-hundred and eighty (180) days written notice from Health Plan to Subscribing Group.

9.01.05    <u>Termination of Membership for Cause</u> - Health Plan may terminate any Member immediately upon written notice for the following reasons which lead to a loss of eligibility of the Member:

a) fraud, material misrepresentation, or omission in applying for membership, benefits, or coverage under this Contract. However, relative to a misstatement in the Application, after two (2) years from the issue date, only fraudulent misstatements in the Application may be used to void the policy or deny any claim for a loss occurred or disability starting after the two (2) year period;

b) misuse of Health Plan's Membership Card furnished to the Member;

c) furnishing to Health Plan incorrect or incomplete information for the purpose of obtaining Membership, coverage, or benefits under this Contract;

d) behavior which is disruptive, unruly, abusive, or uncooperative to the extent that the Member's continuing coverage under this Contract seriously impairs the Health Plan's ability to administer this Contract or to arrange for the delivery of health care services to the Member or other Members after Health Plan has attempted to resolve the Member's problem.

At the effective date of such termination, premium payments received by Health Plan on account of such termination shall be refunded on a pro rata basis, and Health Plan shall have no further liability or responsibility for the Member(s) under this Contract.

9.02    Notification Requirements:

15

AV-G100-2001

9.02.01    Loss of eligibility of Subscriber - It is the responsibility of Subscribing Group to notify Health Plan in writing within thirty-one (31) days from the effective date of termination regarding any Subscriber and/or Dependent who becomes ineligible to participate in Health Plan. Failure of the Subscriber Group to provide timely written notice as described above may lead to retroactive termination of the Subscriber and/or Dependent. The effective date for such retroactive termination will be the last day of the month for which premium was paid and during which the Subscriber and/or Dependent was eligible for coverage. (See Section 7.06)

9.02.02    Loss of eligibility of Dependent - When a Dependent becomes ineligible for Dependent coverage due to age, the Subscriber is required to notify Health Plan in writing within thirty-one (31) days of the Dependent becoming ineligible.

9.02.03    Contract Termination - In the event this Contract is terminated, the Subscribing Group agrees that it shall provide forty-five (45) days prior written notification of the date of such termination to its employee Subscribers who are covered under this Contract.

In no event will any retroactive termination of a Member be made beyond 60 days from notification of the terminating event.

9.03    Continuation Coverage.   Under certain provisions of the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), the Subscriber or his Dependent(s) may become eligible for continuation of coverage if one of the following qualifying events occurs:

9.03.01    Death of the covered employee (Subscriber);

9.03.02    Termination of employment or reduction of work hours of a covered employee (except for employee's gross misconduct);

9.03.03    Divorce or legal separation of covered employee from spouse;

9.03.04    Covered employee becomes entitled to benefits under Medicare; or

9.03.05    Dependent child of covered employee ceases to be a Dependent under Health Plan provisions.

The Subscribing Group shall immediately notify Health Plan if the event in Subsection 9.03.01 or 9.03.02 occurs. The covered Subscriber is obligated to immediately notify his employer and Health Plan if the event in Subsection 9.03.03, 9.03.04 or 9.03.05 occurs. Continuation coverage will be administered in compliance with Federal laws and regulations currently in effect.

9.04    Conversion After Continuation Coverage. See Section 8.04.

9.05    Extension of Benefits.   In the event this Contract is terminated for any reason, except nonpayment of premium or as set forth in 9.05.03, such termination shall be without prejudice to any continuous losses to a Subscriber or Member which commenced while this Contract was in force, but any extension of benefits beyond the date of termination shall be predicated upon the continuous Total Disability as defined in Section 3.37, of the Subscriber or Member and shall be limited to payment for the treatment of a specific accident or illness incurred while the Subscriber was a Member.

16

AV-G100-2001

9.05.01   The extension of benefits covered under this Contract shall be limited to the occurrence of the earliest of the following events:

   a)  The expiration of 12 months;

   b)  Such time as the Member is no longer totally disabled;

   c)  A succeeding carrier elects to provide replacement coverage without Limitation as to the disability condition; or

   d)  The maximum benefits payable under this Contract have been paid.

9.05.02   In the case of maternity coverage, when not covered by the succeeding carrier, a reasonable extension of this Contract's benefits will be provided to cover maternity expenses for a covered pregnancy that commenced while the policy was in effect. The extension shall be for the period of that pregnancy only and shall not be based upon Total Disability.

9.05.03   Except as provided above, no Subscriber is entitled to an extension of benefits if the termination by Health Plan of this Contract is based upon one or more of the following reasons:

   a)  Fraud or intentional misrepresentation in applying for any benefits under this Contract.

   b)  Disenrollment for cause.

   c)  The Subscriber has left the geographic Service Area of Health Plan with the intent to relocate or establish a new residence outside Health Plan's Service Area.

## X.  SCHEDULE OF BASIC BENEFITS

Health Plan assures that the comprehensive prepaid health care services provided to its Subscribers will be rendered under reasonable standards of quality health care. The professional judgment of a Physician licensed under Chapters 458 (physician), 459 (osteopath), 460 (chiropractor) or 461 (podiatrist), Florida Statutes, concerning the proper course of treatment of a Subscriber shall not be subject to modification by Health Plan or its Board of Directors, Officers, or Administrators. However, this subsection is not intended to and shall not restrict any Utilization Management Program established by Health Plan.

All covered services and benefits shall be provided in conformity with Part III (Definitions), Part X (Schedule of Basic Benefits), Part XI (Limitations of Basic Benefits), Part XII (Exclusions From Basic Benefits) and Schedule of Copayments, which by reference, is incorporated herein. It is the Member's responsibility when seeking benefits under this Contract to identify himself as a Health Plan Member and to assure that the services received by the Member are being rendered by Participating Providers.

Members should remember that services that are provided or received without having been authorized in advance by AvMed Health Plan's Medical Department, or if the service is beyond the scope of practice

17

AV-G100-2001

authorized for that Provider under state law, except in instances of Emergency Services and Care, are not covered unless such services otherwise have been expressly authorized under the terms of this Contract. Except for Emergency Services and Care, all services must be received from Participating Providers on referral from AvMed. If a Member does not follow the access rules, he risks having services and supplies received not covered under this Contract. In such a circumstance, the Member will be responsible for reimbursing AvMed for the reasonable cost of the services and supplies received.

Also, Members must understand that services will not be covered if they are not, in AvMed Health Plan's opinion, Medically Necessary. The ordering of a service by a Physician, whether Participating or Non-Participating, does not in itself make such service Medically Necessary. (Subscribing Group and Member acknowledge that it is possible that a Member and his Physician may determine that such services or supplies are appropriate even though such services or supplies are not covered and will not be paid for or arranged by AvMed Health Plan.)

**MEMBERS ARE RESPONSIBLE AND WILL BE LIABLE FOR COPAYMENTS WHICH MUST BE PAID TO HEALTH CARE PROVIDERS FOR CERTAIN SERVICES, AT THE TIME SERVICES ARE RENDERED, AS SET FORTH IN THE SCHEDULE OF COPAYMENTS.**

10.01   The names and addresses of Plan Providers and Hospitals are set forth in a separate booklet which, by reference, is made a part hereof. The list of Plan Providers, which may change from time to time, will be provided to all Subscribing Groups. Notwithstanding the printed booklet, the names and addresses of Plan Providers on file with Health Plan at any given time shall constitute the official and controlling list of Participating Providers.

10.02   Within the Service Area, Members are entitled to receive the covered services and benefits only as herein specified, appropriately prescribed or directed by Participating Physicians. Within the Service Area, the covered services and benefits listed in the Schedule of Basic Benefits are available only from Plan Providers and, except for emergency services as provided in Section 10.11, Health Plan shall have no liability or obligation whatsoever on account of services or benefits sought or received by any Member from any nonparticipating Physician, health professional, Hospital or Other Health Care Facility, or other person, institution or organization, unless prior arrangements have been made for the Member and confirmed by written referral or authorization from Health Plan.

10.03   Each Member shall select one Primary Care Physician upon enrollment. If the Member does not select a Primary Care Physician upon enrollment, a Primary Care Physician will be assigned by Health Plan for the Member. The Member must notify and receive approval by Health Plan **prior** to changing Primary Care Physicians. The Member's change of Primary Care Physicians will become effective on the first day of the month after Member notifies Health Plan and cannot be changed more than once per month. Members are entitled to receive the services of Specialty Health Care Professionals **only** when referred to them by their Primary Care Physician and approved by the Health Plan. Health Professionals may from time to time cease their affiliation with Health Plan. In such cases, the Member will be required to select a new Primary Care Physician and/or will be referred to a new Specialty Health Care Professional.

10.04   Any Member requiring medical, Hospital, or ambulance services for Emergencies (as described in Sections 3.10 and 3.11), either while temporarily outside the Service Area or within the Service Area but before they can reach a Plan Provider, may receive the Emergency benefits as specified in Section 10.11.

18

AV-G100-2001

10.05   Hospital Care: Inpatient.  All Hospital inpatient services received at Plan Hospitals for non-mental illness or injury are provided when prescribed by Plan Physicians and pre-authorized by Health Plan.  Inpatient Services include semi-private room and board, birthing rooms, newborn nursery care, nursing care, meals and special diets when Medically Necessary, use of operating room and related facilities, intensive care unit and services, diagnostic imaging, laboratory and other diagnostic tests, drugs and medications, biologicals, anesthesia and oxygen supplies, physical therapy, radiation therapy, respiratory therapy, and administration of blood or blood plasma.  See Section 10.11 with regard to inpatient emergency services.

Health Plan pre-authorization is required for inpatient Hospital Services for substance abuse, and these services are subject to the conditions set forth in the optional coverage selected.  (Also see Section 11.06)

10.06   Physician Care: Inpatient.  All Medical Services rendered by Plan Physicians and other Health Professionals when requested or directed by the Attending Physician, including surgical procedures, anesthesia, consultation and treatment by Specialists, laboratory and diagnostic imaging services, and physical therapy (See Section 10.08) are provided while the Member is admitted to a Plan Hospital as a registered bed patient.  When available and requested by the Member, Health Plan covers the services of a certified nurse anesthetist licensed under Chapter 464, Florida Statutes.

10.07   Physician Care: Outpatient

  10.07.01   Diagnosis and Treatment.  All Medical Services rendered by Plan Physicians and other Health Professionals, as requested or directed by the Primary Care Physician, are covered when provided at Medical Offices, including surgical procedures, routine hearing examinations and vision examinations for glasses for children under age 18 (such examinations may be provided by optometrists licensed pursuant to Chapter 463, Florida Statutes or by ophthalmologists licensed pursuant to Chapter 458 or 459, Florida Statutes), and consultation and treatment by Specialty Health Care Professionals.  Also included are non-reusable materials and surgical supplies.  These services and materials are subject to the Limitations outlined in Part XI (Limitations of Basic Benefits).  See Part XII for Exclusions.

  10.07.02   Preventive and Health Maintenance Services.  The services of the Member's Primary Care Physician for illness prevention and health maintenance, including well baby care, immunizations, sterilization (See Schedule of Copayments), periodic health assessment, physical examinations, and voluntary family planning services are provided.  These services are subject to Limitations as outlined in Part XI (Limitations of Basic Benefits).  See Part XII for Exclusions.

  10.07.03   Outpatient Mental Health Services are limited to diagnostic evaluation and crisis intervention only.  These services are limited to a total of twenty (20) outpatient visits per Contract Year.  Referral for outpatient mental health services must be arranged by the Member's Plan Physician, and each visit requires a Copayment.  (See Schedule of Copayments)

10.08   Short-Term Rehabilitation (Physical, Occupational or Speech Therapy).  Short-term therapy for acute conditions for which therapy applied for a consecutive two (2) month period can be expected to result in significant improvement.  Rehabilitation services for the acute phase of a chronic condition are covered only if, in the judgment of Health Plan, such services are

19

AV-G100-2001

Medically Necessary and will result in significant improvement of a Member's condition through short-term therapy. Coverage of outpatient short-term and rehabilitative services is limited to twenty-four (24) visits per condition whether services are provided in the office or in the home. Long-term physical therapy, occupational therapy, speech therapy, rehabilitation, or other treatment of chronic conditions is not covered.

10.09   Obstetrical and Gynecological Care.   Covered obstetrical care benefits as specified herein are provided and include Hospital care, anesthesia, diagnostic imaging, and laboratory services for conditions related to pregnancy.   The length of maternity stay in a Hospital will be that determined to be Medically Necessary in compliance with Florida law.   Newborn child care is covered as provided in Subsection 4.02.02 (i) and Section 10.10.   An annual gynecological examination and Medically Necessary follow-up care detected at that visit are available without the need for a prior referral from the Primary Care Physician.

10.10   Newborn Care.   All services applicable for children under this Contract shall be provided to an enrolled newborn child of the Subscriber or the enrolled newborn child of a covered Dependent of the Subscriber or the newborn adopted child of the Subscriber (as described in Subsection 4.02.02 (i)), from the moment of birth, including the Medically Necessary care or treatment of medically diagnosed congenital defects, birth abnormalities or prematurity, and transportation costs to the nearest facility appropriately staffed and equipped to treat the newborn's condition, when such transportation is Medically Necessary.

10.11   Emergency Services.   All necessary Physician and Hospital Services will be provided by Health Plan for emergency care.   (See Part III, Sections 3.10 and 3.11)   In the event that Hospital inpatient services are provided following an emergency admission, Health Plan should be notified within 24 hours or as soon as the Member is lucid and able to notify Health Plan of the emergency admission.   Health Plan will pay the usual, reasonable, and customary charges to a non-Plan Physician or facility only for those services rendered before a Member's condition permits him to be reasonably able to travel to a Plan facility.   In addition, any Member requests for reimbursement (of payment made by the Member for services rendered) must be filed within ninety (90) days after the emergency or as soon as reasonably possible but not later than one (1) year unless the claimant was legally incapacitated.

10.12   Ambulance Service.   For an emergency or when pre-authorized by Health Plan, ambulance service to the nearest Hospital appropriately staffed and equipped to treat the condition will be provided without charge to the Member.

10.13   Other Health Care Facility(ies).   All routine services of Other Health Care Facilities (see Section 3.29), including Physician visits, physiotherapy, diagnostic imaging and laboratory work, are provided for a maximum of twenty (20) days per Contract Year when a Member is admitted to such a facility, following discharge from a Hospital, for a condition that cannot be adequately treated with Home Health Care Services or on an ambulatory basis.

10.14   Diagnostic Imaging and Laboratory.   All prescribed diagnostic imaging and laboratory tests and services including diagnostic imaging, fluoroscopy, electrocardiograms, blood and urine and other laboratory tests, and diagnostic clinical isotope services are provided when Medically Necessary and ordered by a Plan Physician as part of the diagnosis and/or treatment of a covered illness or injury or as preventive health care services.

10.15   Home Health Care Services.   With prior authorization by Health Plan, Home Health Care Services (as defined in Section 3.17) are provided when ordered by and under the direction of the

20

Member's Attending Physician.  Physical, Occupational or Speech Therapy services provided in the home are limited as noted in 10.08.  Homemaker or other Custodial Care services are not covered.

10.16   Hospice Services.  With prior authorization by Health Plan, services are available from a Health Plan affiliated Hospice organization for a Member whose Plan Physician has determined the Member's illness will result in a remaining life span of six (6) months or less.

10.17   Second Medical Opinions.  The Member is entitled to a second medical opinion when he: 1) disputes the appropriateness or necessity of a surgical procedure; or 2) is subject to a serious injury or illness.

With prior notice to Health Plan, the Member may obtain the second medical opinion from any Plan or non-Plan Physician, chosen by the Member, who is within Health Plan's Service Area.  If a Plan Physician is chosen, there is no cost to the Member other than any applicable Copayment. If the Member chooses a non-Plan Physician, the Member will be responsible for 40% of the amount of reasonable and customary charges for the second medical opinion.

Any tests that may be required to render the second medical opinion must be arranged by Health Plan and performed by Plan Providers.  Once a second medical opinion has been rendered, Health Plan shall review and determine the treatment obligations of Health Plan and that judgment is controlling.  Any treatment the Member obtains that is not authorized by Health Plan shall be at the Member's expense.

Health Plan may limit second medical opinions in connection with a particular diagnosis or treatment to three (3) per Contract Year, if Health Plan deems additional opinions to be an unreasonable over-utilization by the Member.

10.18   Durable Medical Equipment and Orthotic Appliances.

10.18.01   Durable Medical Equipment.  This Contract provides benefits, when Medically Necessary, for the purchase or rental of such Durable Medical Equipment that:

a)  Can withstand repeated use (i.e. could normally be rented and used by successive patients);

b)  Is primarily and customarily used to serve a medical purpose;

c)  Generally is not useful to a person in the absence of illness or injury; and

d)  Is appropriate for use in a patient's home.

Some examples of Durable Medical Equipment are: hospital beds, crutches, wheelchairs, and infusion pumps.  Coverage of infusion pumps will apply toward the annual maximum Limitation but shall not be subject to the Limitation.  It does not include hearing aids or corrective lenses, including the professional fee for fitting same.  It also does not include medical supplies and devices, such as a corset, which do not require prescriptions.  The option of purchasing or renting the equipment will be determined based on cost.  Health Plan will require that the most economical option be selected.  Repair and/or replacement is not covered.  See Schedule of Copayments for any Copayments or Limitations. See Part XII for Exclusions.

21

AV-G100-2001

10.18.02   Orthotic Appliances.  Coverage for orthotic appliances is limited to leg, arm, back, and neck custom-made braces when related to a surgical procedure or when used in an attempt to avoid surgery and are necessary to carry out normal activities of daily living, excluding sports activities.  Coverage is limited to the first such item; repair and/or replacement is not covered.  All other orthotic appliances are not covered.  See Schedule of Copayments for any Copayments or Limitations.  See Part XII for Exclusions.

10.19   Prosthetic Devices.  This Contract provides benefits, when Medically Necessary, for prosthetic devices.  Coverage for prosthetic devices is limited to artificial limbs, artificial joints, and ocular prostheses.  Coverage includes the initial purchase, fitting, or adjustment.  Replacement is covered only when Medically Necessary due to a change in bodily configuration.  The initial prosthetic device following a covered mastectomy is also covered.  Replacement of cataract lenses is covered only if there is a change in prescription which cannot be accommodated by eyeglasses.  All other prosthetic devices are not covered.  See Schedule of Copayments for any Copayments or Limitations.  See Part XII for Exclusions.

10.20   Payment to Non-Participating Providers.  When, in the professional judgment of Health Plan's Medical Director, a Member needs covered medical or Hospital Services which require skills or facilities not available from Plan Providers and it is in the best interest of the Member to obtain the needed care from a Non-Participating Provider, upon authorization by the Medical Director, payment not to exceed usual and customary charges for such covered services rendered by a Non-Participating Provider will be made by Health Plan.  Charges for non-Plan Hospital Services will be reimbursed in accordance with the covered benefits the Member would be entitled to receive in a Plan Hospital.

10.21   Prescription Drug Benefits.  Allergy serums, chemotherapy for cancer patients, and covered medication administered by the Attending Physician are covered.  Coverage for insulin and other diabetic supplies is described in Section 10.24, below.  Other prescription drugs are a covered benefit only when the Subscribing Group Contract includes a supplemental Prescription Drug Rider.

10.22   Ventilator Dependent Care Facilities.  With prior authorization by Health Plan, Ventilator Dependent Care Facilities (See Section 3.39) are provided up to a total of 150 days per episode.

10.23   Major Organ Transplants at a facility deemed appropriate and authorized by Health Plan, as well as associated immunosuppressant drugs are covered except those deemed experimental. (See Section 12.15)

10.24   Diabetes Treatment for all Medically Necessary equipment, supplies, and services to treat diabetes.  This includes outpatient self-management training and educational services, if the Member's Primary Care Physician, or the Physician to whom the Member has been referred who specializes in diabetes treatment, certifies the equipment, supplies, or services are Medically Necessary.  Insulin pumps are covered under Section 10.18.  Diabetes outpatient self-management training and educational services must be provided under the direct supervision of a certified diabetes educator or a board certified endocrinologist under contract with Health Plan.

Insulin, insulin syringes, lancets, and test strips are covered under the Subscribing Group's supplemental Prescription Drug Rider.  In the event that a Subscribing Group does not purchase a

22

AV-G100-2001

supplemental Prescription Drug Rider, insulin, insulin syringes, lancets, and test strips are covered subject to a $12 Member Copayment per item for a 30-day supply.

10.25   Mammograms are provided in accordance with <u>Florida Statutes</u>:  one baseline mammogram is available for female Members between the ages of 35 and 39; a mammogram is available every two years for female Members between the ages of 40 and 49; and a mammogram is available every year for female Members aged 50 and older.

In addition, one or more mammograms a year are available when based upon a Physician's recommendation for any woman who is at risk for breast cancer because of a personal or family history of breast cancer, because of having a history of biopsy-proven benign breast disease, because of having a mother, sister, or daughter who has had breast cancer, or because a woman has not given birth before the age of 30.

10.26   Osteoporosis Diagnosis and Treatment when Medically Necessary for high-risk individuals, e.g. estrogen-deficient individuals, individuals with vertebral abnormalities, individuals on long-term glucocorticoid (steroid) therapy, individuals with primary hyperparathyroidism, and individuals with a family history of osteoporosis.

10.27   Dermatological Services.  Health Plan will cover up to five (5) office visits per calendar year to a Plan Dermatologist for Medically Necessary covered services subject to Sections 3.24 and 3.38. No prior referral is required for these services.

10.28   Mastectomy Surgery when performed for breast cancer.  The length of stay will not be less than that determined by the treating Physician to be Medically Necessary in accordance with prevailing medical standards and after consultation with the covered patient.  In addition, coverage is provided for outpatient postsurgical follow-up care in keeping with prevailing medical standards.  This does not prohibit appropriate utilization review or case management by Health Plan.  Reconstructive surgery and prosthetic devices to re-establish symmetry between the two breasts following a mastectomy performed as a result of cancer while the Member was enrolled with Health Plan; this coverage includes coverage for lymphedemas.

10.29   General anesthesia and hospitalization services to a Member who is under 8 years of age and is determined by a licensed dentist and the Member's Physician to require necessary dental treatment in a Hospital or ambulatory surgical center due to a significantly complex dental condition or a developmental disability in which patient management in the dental office has proved to be ineffective; or if the Member has one or more medical conditions that would create significant or undue medical risk for the Member in the course of delivery of any necessary dental treatment or surgery if not rendered in a Hospital or ambulatory surgical center.  Pre-authorization by Health Plan is required.  There is no coverage for diagnosis or treatment of dental disease.

10.30   Coverage for cleft lip and cleft palate for Members under 18 years of age.  The coverage provided by this section is subject to the terms and conditions applicable to other benefits.

AV-G100-2001

## XI.  LIMITATIONS OF BASIC BENEFITS

The rights of Members and obligations of Plan Providers hereunder are subject to the following Limitations:

11.01   In the event of any major disaster, Participating Providers shall render Hospital and Medical Services provided under this Contract insofar as practical, according to their best judgment, within the Limitations of such facilities and personnel as are then available, but Health Plan and Plan Providers shall have no liability or obligation for delay or failure to provide or arrange for such services due to lack of available facilities or personnel if such lack is the result of any major disaster.

11.02   In the event of circumstances not reasonably within the control of Health Plan, such as complete or partial destruction of facilities, act of God, war, riot, civil insurrection, disability of a significant part of Hospital or participating medical personnel or similar causes, if the rendition of medical and Hospital Services provided under this Contract is delayed or rendered impractical, neither Health Plan, Participating Providers nor any Physician shall have any liability or obligation on account of such delay or failure to provide services; however, Health Plan shall make a good faith effort to arrange for the timely provision of covered services during such event.

11.03   Periodic physical examinations are limited to those which in the judgment of the Member's Primary Care Physician are essential to the maintenance of the Member's good health.

11.04   If a Member is covered under more than one Contract with Health Plan, he shall be covered under one but not both.  The refund of any premium payments made under such other Contract shall be limited to the smaller of the amount of overpayment or the amount overpaid during the ninety (90) days immediately preceding the date on which Health Plan received the notice of overpayment from the Subscriber Group or Member.

11.05   A Member shall select one Primary Care Physician upon enrollment.  If the Member does not select a Primary Care Physician upon enrollment, a Primary Care Physician will be assigned by Health Plan for the Member.  The Member may obtain assistance in making a selection by contacting Health Plan.

11.06   Substance Abuse - Hospital Limitation.  Inpatient services for alcohol and drug abuse shall be provided but only for acute detoxification and the treatment of other medical sequelae of such abuse.  Inpatient alcohol or drug rehabilitation services are not covered.

11.07   Visits to Plan Physicians or dietitians/nutritionists for obesity control shall be limited to outpatient visits necessary to establish a program of obesity control, and each visit requires a Copayment. (See  Schedule of Copayments and also Section 12.22)

11.08   Spinal manipulations will be provided only when Medically Necessary and prescribed by a Plan Physician or by self-referral to a Plan Physician.

11.09   The total benefit for Ventilator Dependent Care Facilities is limited to 150 calendar days per episode.

24

AV-G100-2001

11.10   Inpatient Hospital care for a medical "Emergency," in-area or out-of-area, will only be covered when authorized by Health Plan, after the Member or the Hospital notifies Health Plan within 24 hours of admission or as soon as the Member is lucid and able to notify Health Plan of the emergency admission.

11.11   Other Health Care Facility (ies).  All routine services of Other Health Care Facilities (See Section 3.28), including Physician visits, physiotherapy, diagnostic imaging and laboratory work, are provided for a maximum of twenty (20) days per Contract Year when a Member is admitted to such a facility, following discharge from a Hospital, for a condition that cannot be adequately treated with Home Health Care Services or on an ambulatory basis.

11.12   Short-Term Rehabilitation Services (Physical, Occupational or Speech Therapy) shall be limited as explained in Section(s) 10.08 and 10.15.

## XII. EXCLUSIONS FROM BASIC BENEFITS

Medical Services and benefits for the following classifications and conditions are **not covered** and are excluded from the Schedule of Basic Benefits provided under this Contract:

12.01   Treatment of a condition resulting from:

a)   War or any act of war, whether declared or undeclared;

b)   Insurrection or participation in a riot or rebellion;

c)   Engagement in an illegal occupation;

d)   Commission of or attempted commission of an assault; commission or attempted commission of a crime punishable as a felony;

12.02   Cosmetic, surgical or non-surgical procedures which are undertaken primarily to improve or otherwise modify the Member's external appearance, except reconstructive surgery necessary to correct and repair a functional disorder as a result of a disease, injury, or congenital defect or initial implanted prosthesis and reconstructive surgery incident to a mastectomy for cancer of the breast.  Also excluded are surgical excision or reformation of any sagging skin of any part of the body, including, but not limited to: the eyelids, face, neck, abdomen, arms, legs, or buttocks; any services performed in connection with the enlargement, reduction, implantation or change in appearance of a portion of the body, including, but not limited to: the face, lips, jaw, chin, nose, ears, breasts, or genitals (including circumcision, except newborns while an inpatient following birth); hair transplantation; chemical face peels or abrasion of the skin; electrolysis depilation; removal of tattooing; or any other surgical or non-surgical procedures which are primarily for cosmetic purposes or to create body symmetry.  Removal of warts, moles, skin tags, lipomas, keloids, scars, and other benign lesions is not covered.  Additionally, all medical complications as a result of cosmetic, surgical or non-surgical procedures are excluded.

12.03   Medical care or surgery not authorized by a Plan Participating Provider, except for Emergency Services, or not within the benefits covered by Health Plan.

12.04   Dental Care, as defined in 3.07, for any condition except:

AV-G100-2001

12.04.01   When such services are for the treatment of trauma related fractures of the jaw or facial bones or for the treatment of tumors;

12.04.02   Reconstructive jaw surgery for the treatment of deformities that are **present** and **apparent** at birth, provided the Member was continuously covered by Health Plan from date of birth to date of surgery; or

12.04.03   Full mouth extraction when required before radiation therapy.

12.05   Services related to the diagnosis/treatment of temporomandibular joint (TMJ) dysfunction except when Medically Necessary; all dental treatment for TMJ.

12.06   Mandibular and maxillary osteotomies except when Medically Necessary to treat conditions caused by congenital or developmental deformity, disease, or injury.

12.07   Medical supplies including, but not limited to: ostomy supplies, urinary catheter bags, pre-fabricated splints, and all bandages.

12.08   Home monitoring devices and measuring devices, ventilator equipment, inhalers, and any other equipment or devices for use outside the Hospital.

12.09   Surgically implanted devices and any associated external devices, except for cardiac pacemakers, intraocular lenses, artificial joints and orthopedic hardware, and vascular grafts.   Dental appliances, other corrective lenses and hearing aids, including the professional fee for fitting them are not covered.

12.10   Over-the-counter medications, all contraceptives (including drugs and devices), hypodermic needles and syringes and injectable drugs except chemotherapy for cancer patients, insulin and insulin syringes, allergy serums and any medications administered by the Attending Physician to treat the acute phase of an illness.

12.11   Travel expenses including expenses for ambulance services to and from a Physician or Hospital except in accordance with Section 10.12.

12.12   Treatment for chronic alcoholism and chronic drug addiction, except those services offered as a basic health service (See Section 11.06).

12.13   Treatment for armed forces service-connected medical care (for both sickness and injury).

12.14   Custodial Care (as defined in Part III, Section 3.06).

12.15   Experimental and/or investigational procedures unless approved per Florida Administrative Code, Section 59B-12.001. Experimental and/or investigational means, for the purposes of this Contract, a drug, treatment, device, surgery or procedure that Health Plan in its sole discretion, determines:

a)   cannot lawfully be marketed without the approval of the Food and Drug administration or other appropriate governmental agency, and such approval has not been granted at the time of use or proposed use;

26

AV-G100-2001

b) that generally accepted or commonly and customarily recognized opinion among experts who regularly practice in the area of treatment of this particular disease or condition, is that usage should be substantially confined to research settings as set forth in the published authoritative literature; or

c) that is being provided pursuant to a Phase I or Phase II clinical trial or as the experimental or research arm of a Phase III clinical trial.

12.16   Personal comfort items not Medically Necessary for proper medical care as part of the therapeutic plan to treat or arrest the progression of an illness or injury. This Exclusion includes, but is not limited to: wigs (including partial hair pieces, weaves, and toupees); personal care kits; guest meals and accommodations; maid service; television/radio; telephone charges; photographs; complimentary meals; birth announcements; take home supplies; travel expenses other than Medically Necessary ambulance services that are provided for in the covered benefits section; air conditioners; humidifiers; dehumidifiers; and air purifiers or filters.

12.17   Physical examinations or tests, such as premarital blood tests or tests for continuing employment, education, licensing, or insurance or that are otherwise required by a third party.

12.18   Eye examinations for Plan Members 18 years of age or older for the purpose of determining the need for sight correction (such as eye glasses or contact lenses).

12.19   Eye care including:

a) Eye examinations for Plan Members 18 years of age or older for the purpose of determining the need for sight correction (such as eye glasses or contact lenses);

b) Training or orthoptics, including eye exercises; or

c) Radial Keratotomy, refractory keratoplasty, Lasik surgery or any other corneal surgical procedure to correct refractive error.

12.20   Hearing examinations for Plan Members 18 years of age or older for the purpose of determining the need for hearing correction.

12.21   Cosmetics, dietary supplements, nutritional formulae, health or beauty aids.

12.22   Gastric stapling, gastric bypass, gastric bubbles, and other procedures for the treatment of obesity or morbid obesity, as well as any related evaluations or diagnostic tests. Ongoing visits other than establishing a program of obesity control.

12.23   Gender reassignment surgery as well as any service, supply, or medical care associated with gender reassignment or gender identity disorders.

12.24   All drugs, devices, and other forms of treatment related to a diagnosis of sexual dysfunction.

12.25   Infertility diagnosis, treatment, and supplies, including infertility testing, treatment of infertility, diagnostic procedures and artificial insemination, to determine or correct the cause or reason for infertility or inability to achieve conception. This includes artificial insemination, in-vitro fertilization, ovum or embryo placement or transfer, gamete intra-fallopian tube transfer, or

27

cryogenic or other preservation techniques used in such or similar procedures. Drugs for the treatment of infertility are not covered.

12.26  Reversal of sterilization procedures.

12.27  Immunizations and medications for the purpose of foreign travel or employment.

12.28  Acupuncture, biofeedback, hypnotherapy, massage therapy, sleep therapy, sex therapy, behavioral training, cognitive therapy, and vocational rehabilitation.

12.29  Foot supports are not covered. These include shoe build-ups, shoe orthotics, shoe braces, and shoe supports. Also excluded is routine foot care, including trimming of corns, calluses, and nails.

12.30  The medical and Hospital Services for a donor or prospective donor who is a Health Plan Member when the recipient of an organ transplant is not a Health Plan Member. Coverage is provided for costs associated with the bone marrow donor-patients to the same extent as the insured recipient. The reasonable costs of searching for the bone marrow donor is limited to immediate family members and the National Bone Marrow Donor Program.

12.31  Diagnostic testing and treatment related to mental retardation or deficiency, learning disabilities, behavioral problems, developmental delays, Autism Spectrum Disorder or Attention Deficit Disorder. Expenses for remedial or special education, counseling, or therapy including evaluation and treatment of the above-listed conditions or behavioral training whether or not associated with manifest mental disorders or other disturbances.

12.32  Emergency room services for non-emergency purposes. (See Sections 3.10 and 3.11)

12.33  Hospital Services that are associated with excluded surgery or Dental Care.

12.34  Any non-Plan treatment received by a Member, except in the case of an Emergency or when specifically pre-authorized by Health Plan. (See Sections 3.10 and 3.11)

12.35  Physical, speech, occupational, and all other therapies for chronic conditions. Speech therapy for delayed or abnormal speech pathology is not covered.

12.36  Alcohol or substance abuse rehabilitation, vocational rehabilitation, cardiac rehabilitation, pulmonary rehabilitation, long term rehabilitation, or any other rehabilitation program.

12.37  Surgery for the reduction or augmentation of the size of the breasts except when Medically Necessary.

12.38  Termination of pregnancy unless deemed Medically Necessary by the Medical Director, subject to applicable state and federal laws or as specified in the Elective Termination of Pregnancy supplement to the Subscribing Group Contract.

12.39  Hospital Exclusion. If a Member elects to receive Hospital care from a non-Plan attending Physician or a non-Plan Hospital, then coverage is excluded for the entire episode of care, except when the admission was due to an Emergency or with prior written authorization of Health Plan.

28

AV-G100-2001

12.40   Ventilator Dependent Care Facilities except for a maximum of 150 days per episode as provided in Part X (Schedule of Basic Benefits), Section 10.22 (Ventilator Dependent Care Facilities).

12.41   Private duty nursing services.

12.42   Any sickness or injury for which the covered person is paid benefits, or may be paid benefits if claimed, if the covered person is covered or required to be covered by Workers' Compensation. In addition, if the covered person enters into a settlement giving up rights to recover past or future medical benefits under a Workers' Compensation law, Health Plan shall not cover past or future Medical Services that are the subject of or related to that settlement.

12.43   Complications of any non-covered service, including the evaluation or treatment of any condition which arises as a complication of a non-covered service.

12.44   Any service or supply to eliminate or reduce dependency on or addiction to tobacco, including but not limited to: nicotine withdrawal programs, facilities, and supplies (e.g. transdermal patches, Nicorette gum).

12.45   Services associated with autopsy or postmortem examinations, including the autopsy.

12.46   Exercise programs, gym memberships, or exercise equipment of any kind, including, but not limited to: exercise bicycles; treadmills; stairmasters, rowing machines; free weights or resistance equipment.  Also excluded are massage devices; portable whirlpool pumps, hot tubs, jacuzzis, sauna baths and similar equipment.

## XIII.  COORDINATION OF BENEFITS

13.01   The services and benefits provided under this Contract are not intended and do not duplicate any benefit to which Members are entitled under any other Group Health Insurance, HMO, Personal Injury Protection and Medical Payments under the Automobile Insurance Laws of this or any other jurisdiction, governmental organization, agency, or any other entity providing health or accident benefits to a Member, including but not limited to: Medicare, Worker's Compensation, Public Health Service, Champus, Maritime Health Benefits, or similar state programs as permitted by contract, policy, or law.  Health Plan coverage will be primary to Medicaid benefits.

13.02   If any covered person is eligible for services or benefits under two or more plans as set forth in Section 13.01, the coverage under those plans will be coordinated so that up to but not more than 100% of any eligible expense will be paid for or provided by all such plans combined.  The Member shall execute and deliver such instruments and papers as may be required and do whatever else is necessary to secure such rights to Health Plan.  Failure to do so will result in nonpayment of claims.  Requested information should be provided to Health Plan within thirty (30) days of request or Member will be responsible for payment of claim.  Information received after one (1) year from date of service will not be considered.

13.03   The standards governing the coordination of benefits are the following; pursuant to the provisions of Section 627.4235, Florida Statutes:

AV-G100-2001

13.03.01   The benefits of a policy or plan which covers the person as an employee, Member, or Subscriber, other than as a Dependent, are determined before those of the policy or plan which covers the person as a Dependent.

13.03.02   Except as stated in Subsection 13.03.03, when two or more policies or plans cover the same child as a Dependent of different parents:

a)   The benefits of the policy or plan of the parent whose birthday, excluding year of birth, falls earlier in a year are determined before those of the policy or plan of the parent whose birthday, excluding year of birth, falls later in that year; but

b)   If both parents have the same birthday, the benefits of the policy or plan which covered the parent for a longer period of time are determined before those of the policy or plan which covered the parent for a shorter period of time.

However, if a policy or plan subject to the rule based on the birthday of the parents as stated above coordinates with an out-of-state policy or plan which contains provisions under which the benefits of a policy or plan covers a person as a Dependent of a male are determined before those of a policy or plan which covers the person as a Dependent of a female and if, as a result, the policies or plans do not agree on the order of benefits, the provisions of the other policy or plan shall determine the order of benefits.

13.03.03   If two or more policies or plans cover a Dependent child of divorced or separated parents, benefits for the child are determined in this order:

a)   First, the policy or plan of the parent with custody of the child;

b)   Second, the policy or plan of the spouse of the parent with custody of the child; and

c)   Third, the policy or plan of the parent not having custody of the child.

However, if the specific terms of a court order state that one of the parents is responsible for the health care expenses of the child and if the entity obliged to pay or provide the benefits of the policy or plan of that parent has actual knowledge of those terms, the benefits of that policy or plan are determined first. This does not apply with respect to any claim determination period or plan or policy year during which any benefits are actually paid or provided before that entity has that actual knowledge.

13.03.04   The benefits of a policy or plan which covers a person as an employee who is neither laid off nor retired, or as that employee's Dependent, are determined before those of a policy or plan which covers that person as a laid off or retired employee or as that employee's Dependent. If the other policy or plan is not subject to this rule, and if, as a result, the policies or plans do not agree on the order of benefits, this Subsection shall not apply.

13.03.05   If none of the rules in Subsections 13.03.01, 13.03.02, 13.03.03, or 13.03.04 determine the order of benefits, the benefits of the policy or plan which covered an

30

AV-G100-2001

employee, Member, or Subscriber for a longer period of time are determined before those of the policy or plan which covered that person for the shorter period of time.

13.03.06   Coordination of benefits shall not be permitted against an indemnity-type policy, an excess insurance policy as defined in Section 627.635, Florida Statutes, a policy with coverage limited to specified illnesses or accidents, or a Medicare supplement policy. However, if the person is also a Medicare beneficiary, and if the rule established under the Social Security Act of 1965, as amended, makes Medicare secondary to the plan covering the person as a Dependent of an active employee, the order of benefit determination is:

a)  First, benefits of a plan covering a person as an employee, Member, or Subscriber.

b)  Second, benefits of a plan of an active worker covering a person as a Dependent.

c)  Third, Medicare benefits.

13.03.07   If an individual is covered under a COBRA continuation plan as a result of the purchase of coverage as provided under the Consolidation Omnibus Budget Reconciliation Act of 1987 (Pub.L. No. 99-272), and also under another group plan, the following order of benefits applies:

a)  First, the plan covering the person as an employee, or as the employee's Dependent.

b)  Second, the coverage purchased under the plan covering the person as a former employee, or as the former employee's Dependent provided according to the provisions of COBRA.

13.04   For the purpose of determining the applicability and implementing the terms of the Coordination of Benefits provision of this agreement, Health Plan may, without the consent of or notice to any person, release to or obtain from any other insurance company, organizations or person, any information, with respect to any Subscriber or applicant for subscription, which Health Plan deems to be necessary for such purposes.

13.05   Whenever payments which should have been made under this plan in accordance with this provision have been made under any other plans, Health Plan shall have the right, exercisable alone and in its sole discretion, to pay over to any organizations making such other payments any amounts Health Plan shall determine to be warranted in order to satisfy the intent of this provision, and amounts so paid shall be deemed to be Benefits paid under this Plan.

13.06   All treatments must be Medically Necessary and comply with all terms, conditions, Limitations, and Exclusions of this Plan even if Health Plan is secondary to other coverage and the treatment is covered under the other coverage.

31

AV-G100-2001

## XIV. REIMBURSEMENT

In the event that Health Plan provides medical benefits or payments to a Member who suffers injury disease, or illness by virtue of a negligent act or omission by a third party, Health Plan is entitled t reimbursement from the Subscriber in accordance with 768.76 (4), <u>Florida Statutes.</u>

Member may be asked to provide a written assignment to Health Plan of Member's rights to all claim demands, and rights to recovery that Member may have against the third party. Health Plan may take an action it deems necessary to protect its rights to recover the amount of any payments made by Healt Plan, including the right to bring suit in Member's name. Member shall execute and deliver any and a instruments and papers as may be required by Health Plan and do whatever else is necessary to secur such recovery rights of Health Plan.

Member shall hold such proceeds in trust for the benefit of Health Plan and pay them to Health Plan upo demand if the proceeds have been paid directly to the Member.

## XV. DISCLAIMER OF LIABILITY

15.01    Neither Subscribing Group nor its agents, servants or employees, nor any Member is the agent representative of Health Plan, and none of them shall be liable for any acts or omissions Health Plan, its agents or employees or of a Plan Hospital, or a Plan Physician, or any otl person or organization with which Health Plan has made or hereafter shall make arrangeme for the performance of services under this Contract.

15.02    Neither Subscribers of Subscribing Group nor their Dependents shall be liable to Health Plan Plan Providers except as specifically set forth herein, provided all procedures set forth herein followed.

15.03    Neither Health Plan nor its agents, servants or employees, nor any Member is the agent representative of the Subscriber Group, and none of them shall be liable for any acts or omissi of Subscriber Group, its agents or employees or any other person representing or acting on bel of Subscriber Group.

15.04    Health Plan does not directly employ any practicing Physicians nor any Hospital personne Physicians. These health care providers are independent contractors and are not the agent: employees of Health Plan. Therefore, Health Plan shall not be liable for any negligent ac omission committed by any independent practicing Physicians, nurses, or medical personnel, any Hospital or health care facility, its personnel, other health care professionals or any of tl employees or agents who may, from time to time, provide Medical Services to a Member of Plan. Furthermore, Health Plan shall not be vicariously liable for any negligent act or omiss of any of these independent health care professionals who treat a Member(s) of Health Plan.

15.05    Certain Members may, for personal reasons, refuse to accept procedures or treatm recommended by Plan Physicians. Plan Physicians may regard such refusal to accept th recommendations as incompatible with the continuance of the Physician/patient relationship as obstructing the provision of proper medical care. If a Member refuses to accept the med

AV-G100-2001

treatment or procedure recommended by the Plan Physician and if, in the judgment of the Plan Physician, no professionally acceptable alternative exists or if an alternative treatment does exist but is not recommended by the Plan Physician, the Member shall be so advised.

If the Member continues to refuse the recommended treatment or procedure, Health Plan may terminate the Member's coverage under this Contract as set forth in Part IX, Subsection 9.01.05.

## XVI. GRIEVANCE PROCEDURE

16.01   Grievance Procedure.   Members are entitled to have any complaint regarding the services or benefits covered under this Contract reviewed by Health Plan which is obliged to resolve such complaint in an equitable fashion, according to Health Plan's Complaint/Grievance Procedures then in effect.  The Primary Care Physician and/or the Medical Director shall participate in any Subscriber grievance where the appropriateness of treatment or quality of care is an issue.  The grievance must be submitted within one year from the date of occurrence of the action that initiated the grievance.  A grievance related to an adverse determination must be made within thirty (30) days of the receipt of the denial letter.  A Member with a complaint shall take the following steps:

a)   Grievances related to complaints about the quality of service, office waiting times, Physician behavior, adequacy of facilities or other Member concerns:

AvMed encourages the informal resolution of complaints (i.e. over the telephone). However, if a Member complaint cannot be resolved in this manner, the Member may submit his or her grievance in writing to the AvMed Member Services Department. AvMed shall acknowledge the written grievance and investigate the grievance.  A written response regarding the disposition of the complaint shall be provided within 60 days after receipt of the written grievance.

b)   Grievance concerning an adverse determination:

An adverse determination means a coverage determination that an admission, availability of care, continued stay, or other health care service has been reviewed and based upon the information provided, does not meet AvMed's requirements for medical necessity, appropriateness, health care setting, level of care or effectiveness, and coverage for the requested service is therefore denied, reduced, or terminated.

A grievance related to an adverse determination must be made within thirty (30) days of the receipt of the denial letter. The Member may call AvMed's Member Services Department at 1-800-882-8633 (1-800-88AvMed) or submit the grievance in writing. The request will be acknowledged in writing within five (5) working days.

A friend, lawyer, or someone else may assist the Member with their grievance regarding an adverse determination. AvMed will also assist. For any questions or assistance, call AvMed Member Services at 1-800-882-8633.

AvMed is responsible for gathering all necessary medical information relevant to the request. However, it may be helpful to provide additional information to clarify or support the request.  The request will be investigated including all aspects of clinical care involved.

33

AV-G100-2001

Persons who previously were not involved in the initial determination shall conduct an internal review. A decision will be made within 30 working days. Written notification of the decision will be provided to the Member. If the initial request for reconsideration was verbal, and the outcome of AvMed's internal review is unfavorable, the Member may request a second-level review by calling or writing to:

AvMed Member Relations
P.O. Box 749
Gainesville, Florida 32602-0749
1-800-346-0231
FAX: 352-337-8794

If the initial request was in writing, and the outcome of AvMed's internal review is unfavorable, the request will be forwarded for a second-level review.

A panel will be appointed for the second-level review composed of a majority of representatives who were not involved in any previous decisions. The second-level review will occur within 30 working days of receipt of the request. For those whose initial request was in writing and automatically forwarded for a second-level review, the resolution of the request will occur within 60 days after the initial receipt.

For requests regarding adverse determinations, the majority of the persons reviewing the adverse determination will be providers who have appropriate expertise. The Member has a right to appear before the panel in person or participate by conference call or other appropriate technology. Written notification of the decision of the second-level review will be provided to the Member within five (5) working days of the completion of the review.

If the Member is not satisfied with AvMed's final decision, he/she may contact the following State agency in writing within 365 days of receipt of the final decision letter. This information will also be provided to the Member in the final decision letter:

Statewide Provider and Subscriber Assistance Panel (SPSAP)
Agency for Health Care Administration
HMO Section
2727 Mahan Drive
Tallahassee, Florida 32308
850-921-5458

c) Grievances involving denial of services excluded from the Member's benefit package, claims payment, reimbursement of health care services, or other matters pertaining to the contractual relationship between a Member and AvMed:

A grievance related to denial of services excluded from the Member's benefit package, claims payment, reimbursement, or other contractual matters, must be made within thirty (30) days of the receipt of the denial letter. The Member may call AvMed's Member Services Department at 1-800-882-8633 (1-800-88AvMed) or submit the grievance in writing. The request will be acknowledged in writing within five (5) working days.

A friend, lawyer, or someone else may assist the Member with the grievance request or reconsideration. AvMed will also assist. For questions or assistance, call AvMed Member Services at 1-800-882-8633.

34

AvMed is responsible for gathering all necessary information relevant to the request. However, it may be helpful to provide additional information to clarify or support the request. The request will be investigated. Persons who previously were not involved in the initial determination shall conduct an internal review. A decision will be made within 30 working days. Written notification of the decision will be provided to the Member. If the initial request for reconsideration was verbal, and the outcome of AvMed's internal review is unfavorable, the Member may request a second-level review by calling or writing to:

AvMed Member Relations
P.O. Box 749
Gainesville, Florida 32602-0749
1-800-346-0231
FAX: 352-337-8794

If the initial request was in writing, and the outcome of AvMed's internal review is unfavorable, the request will be forwarded for a second-level review.

A panel will be appointed for the second-level review composed of a majority of representatives who were not involved in any previous decisions. The second-level review will occur within 30 working days of receipt of the request. For those whose initial request was in writing and automatically forwarded for a second-level review, the resolution of the request will occur within 60 days after the initial receipt.

The Member has a right to appear before the panel in person or participate by conference call or other appropriate technology. Written notification of the decision of the second-level review will be provided to the Member within five (5) working days of the completion of the review.

If the Member is not satisfied with AvMed's final decision, he/she may contact the following State agency in writing and within 365 days of receipt of the final decision letter. This information will also be provided in the final decision letter sent to the Member:

Statewide Provider and Subscriber Assistance Panel (SPSAP)
Agency for Health Care Administration
HMO Section
2727 Mahan Drive
Tallahassee, Florida 32308
850-921-5458

d) Grievances involving expedited review of an urgent adverse determination:

An urgent adverse determination is an adverse determination when the standard timeframe of the grievance procedure would seriously jeopardize the life or health of a Member or would jeopardize the Member's ability to regain maximum function.

A request for an urgent adverse determination may be submitted orally or in writing. Requests for expedited determinations will be reviewed by the Medical Department to determine if the request meets the criteria for an urgent adverse determination. If the request does not meet the criteria for an expedited review, the request will be processed through the standard grievance procedure. The Member will be informed in writing that the

35

AV-G100-2001

request is not an urgent adverse determination and will be processed through the standard grievance procedures.

An appropriate clinical peer or peers will evaluate all expedited reviews. The clinical peer or peers will not have been involved in the initial adverse determination. A decision will be made and the Member notified as expeditiously as the Member's medical condition requires, but in no event more than 72 hours after receipt of the request for expedited review. If the expedited review is a concurrent review determination, services shall be continued without liability to the Member until the Member has been notified of the decision.

AvMed will provide written confirmation of its decision within two (2) working days after providing notification of the decision, if the initial notification was not in writing. AvMed will not provide an expedited review for a retrospective adverse determination.

If the Member is not satisfied with AvMed's final decision, he/she may contact the following State agency in writing and within 365 days of receipt of the final decision letter. This information will also be provided to the Member in the final decision letter:

Statewide Provider and Subscriber Assistance Panel (SPSAP)<br>
Agency for Health Care Administration<br>
HMO Section<br>
2727 Mahan Drive<br>
Tallahassee, Florida 32308<br>
850-921-5458

## XVII. MISCELLANEOUS

17.01   **Contracting Parties.**  By executing this Contract, Subscribing Group and Health Plan agree make the medical and Hospital Services specified herein available to persons who are eligible under the provisions of Part IV.  However, the delivery of benefits and services covered in the Contract shall be subject to the provisions, Limitations, and Exclusions set forth herein and amendments, modifications, and Contract termination provisions specified herein and by mutual agreement between Health Plan and Subscribing Group, without the consent concurrence of the Members.  By electing or accepting medical and Hospital or other benefits hereunder, all Members legally capable of contracting and the legal representatives of Members incapable of contracting, agree to all terms, conditions, and provisions hereof.

No changes or amendments to this Contract shall be valid unless approved by an executive officer of Health Plan and endorsed herein or attached hereto.  No agent has authority to change this Contract or to waive any of its provisions.

17.02   **Certificate of Coverage.**  Health Plan shall provide a copy of the Certificate of Coverage each Subscriber.

17.03   **Membership Application.**  Members or applicants for membership shall complete and submit Health Plan such applications or other forms or statements as Health Plan may reasonably request.  If Member or applicant fails to provide accurate information which Health Plan

AV-G100-2001

material then, upon ten (10) days written notice, Health Plan may deny coverage and/or membership to such individual.

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony, punishable as provided by <u>Florida Statutes</u>.

17.04   **Membership Cards.**  Cards issued by Health Plan to Members pursuant to this Contract are for purposes of identification only.  Possession of a Health Plan identification card confers no right to health services or other benefits under this Contract.  To be entitled to such services or benefits the holder of the card must, in fact, be a Member on whose behalf all applicable charges under this Contract have actually been paid and accepted by Health Plan.

17.05   **Physical Examination.**  Although Health Plan does not impose a pre-existing condition Limitation on Members, Health Plan, at its own expense, shall have the right and opportunity to physically examine the Member when and as often as it may reasonably require during the pendency of a claim hereunder.

17.06   **Waiver.**  A claim which has not been timely filed with Health Plan within one (1) year of date of service, shall be considered waived.

17.07   **Non-Waiver.**  The failure of Health Plan to enforce any of the provisions of this Contract or to exercise any options herein provided or to require timely performance by any Member or Subscriber Group of any of the provisions herein, shall not be construed to be a waiver of such provisions nor shall it affect the validity of this Contract or any part thereof or the right of Health Plan to thereafter enforce each and every such provision.

17.08   **Plan Administration.**  Health Plan may from time to time adopt reasonable policies, procedures, rules, and interpretations to promote the orderly and efficient administration of this Contract.

17.09   **Notice.**  Any notice intended for and directed to a party to this Contract, unless otherwise expressly provided, should be sent by United States mail, postage prepaid, addressed as follows:

If to Health Plan, to:

AvMed Health Plan
P. O. Box 749
Gainesville, Florida  32602-0749

(OR if from a Member to Health Plan see the Member's Service Area address listed on Page i.)

If to a Member:   To the last address provided by the Member and actually received by Health Plan on the enrollment or change of address notification.

If to Subscribing Group:  To the address provided in the Group Master Application.

17.10   **Gender.**  Whenever used, the singular shall include the plural and the plural the singular and the use of any gender shall include all genders.

17.11   **Clerical Errors.**  Clerical error(s) shall neither deprive any individual Member of any benefits or coverage provided under this Group Contract nor shall such error(s) act as authorization of benefits or coverage for the Member that is not otherwise validly in force.   Retroactive

37

AV-G100-2001

adjustments in coverage, for clerical errors or otherwise will only be done for up to a 60 day period from the date of notification. Refunds of premiums are done for up to a 60 day period from the date of notification. Refunds of premiums are limited to a total of 60 days from the date of notification of the event, provided there are no claims incurred subsequent to the effective date of such event.

17.12    **Contract Review.** Subscribing Group may, if this Contract is not satisfactory for any reason, return this Contract within three (3) days after receipt and receive a full refund of the deposit paid, if any, unless the services of Health Plan were utilized during the three (3) days. If this Contract is not returned within three (3) days after receipt, then this Contract shall be deemed to have been accepted.

17.13    **Premium Tax.** If any government entity shall impose a premium tax or surcharge, then the sums due from the Subscribing Group under the terms of this Contract shall be increased by the amount of such premium tax or surcharge.

17.14    **Entirety of Contract.** This Agreement and all applicable Schedules, Exhibits, Riders and any other attachments and endorsements, constitute the entire Contract between the Subscribing Group and Health Plan. No modification (or oral representation) of this Group Contract shall be of any force or effect unless it is in writing and signed by both parties.

17.15    **Rate Letter.** The "rate letter" is Health Plan's formal notice to the Subscribing Group of the premium rates applicable to the group, the conditions under which the rates are valid, the premium payment terms and due dates, the additional charge which will apply to all late premium payments, Health Plan's reservation of the right to adjust (re-rate) the premium quote to account for changes in the group size or in the data supplied by the Subscribing Group to Health Plan, the applicable employer-employee contribution to the premium payment and the charge for other optional, supplemental benefits selected by the group, if any.

17.16    **Third Party Beneficiary.** This Contract is entered into exclusively between the Subscribing Group and Health Plan. This Contract is intended only to benefit the Subscribing Group and the Member(s) and does not confer any rights on any other third parties.

17.17    **Assignment.** This Contract, and all rights and benefits related thereto, may not be assigned by the Subscribing Group or the Member(s) without written consent of Health Plan.

17.18    **Statute of Limitations.** A claim which has not been timely filed with Health Plan shall be considered waived if, on the date notice of it is received by Health Plan, that claim would otherwise have been barred by any Florida Statute of Limitations if asserted in a civil court.

17.19    **Applicability of Law.** The provisions of this Contract shall be deemed to have been modified by the parties, and shall be interpreted, so as to comply with the laws and regulations of the State of Florida and the United States.

17.20    **ERISA.** When this Contract is purchased by the Subscribing Group to provide benefits under a welfare plan governed by the Employee Retirement Income Security Act (ERISA), AvMed is not the plan administrator or named fiduciary of the welfare plan, as those terms are used in ERISA. If a Member has questions about the welfare plan, the Member should contact the Subscribing Group.

38

AV-G100-2001



**AvMed**
H E A L T H   P L A N

P.O. Box 749
GAINESVILLE
FLORIDA 32602-0749
(352) 372-8400
(800) 346-0231

08/28/01

Member# 11850411501

David M. Solomon
6500 La Gorce Lane
Lake Worth, FL  33463-7379

### Notice of Denial of Medical Services

Dear  Mr. Solomon,
On August 22, 2001, we, AvMed Health Plan, received a request from Dr. Mark A. Clarke for a referral to Dr. Robert Marema.

The medical service that  your physician requested has been denied because Dr. Marema is non-participating with AvMed Health Plan and according to your Group Contract Part X,  except for emergencies, all specialty care must be received from participating providers.

You have the option to appeal this decision as per the Group Medical and Hospital Service Contract.  If you wish to have this determination reviewed, you may call or file a written appeal (within 60 days of receipt of this notice) to the address listed below:

AvMed Health Plan
Member Service Department P.O. Box 823
Gainesville, Florida  32602-0823
1-800-882-8633

Routine appeals are processed within 30 days.  In some cases, you may have a right to a faster, 72-hour appeal.  Your request will be expedited if waiting 30 days for a routine appeal could seriously harm your health or ability to function.

If you request an expedited review, we will examine the situation to make an objective decision based on all of the information available and notify you within 72-hours of receipt of your request.  If you do not meet the criteria for a 72-hour appeal, you will be notified that your appeal will be processed in 30 days through the routine appeal procedures.

Your physician has received notification of this determination.

Sincerely,

Karen King, RN
Pre Authorization Director

cc:     Physician
        Facility (if inpatient)
        Member Service

A V M E D  ·  T H E     H E A L T H     I M P R O V E M E N T     C O M P A N Y

GP-1115 (11/97)



P.O. BOX 749
GAINESVILLE
FLORIDA 32606-0749
(352) 372-8400
(800) 346-0231

October 1, 2001


David M Solomon
6500 La Gorce Ln
Lake Worth, Fl 33463-7379


**AvMed ID# 11850411501**          **Group: Publix SuperMarkets, Inc.**

Dear  David M Solomon,

The AvMed Plan Office has received your request for reconsideration for gastric surgery.  The request has been reviewed and denied as not a covered benefit. However, please be advised that AvMed offers a discounted Weight Watchers reimbursement program through the Healthy Promotions Department.  Through this program, you are eligible to receive 100% reimbursement for Weight Watchers fees once  you reach your goal weight and become a Weight Watchers Lifetime Member. Attached is a Weight Watchers brochure that describes the program in detail.

Please refer to your <u>Group Medical and Hospital Service Contract</u>, Section XII. "Exclusions From Basic Benefits", Paragraph 12.22, which excludes:

> *"Gastric stapling, gastric bypass, gastric bubbles, and other procedures for the treatment of obesity, as well as any related evaluations or diagnostic tests.  Ongoing visits other than establishing a program of obesity control."*

Should you wish to pursue this matter further, you may file a second level appeal, however, please be advised this denial is based on a contractual exclusion and in most cases, the contract will be upheld.  You may file a second level appeal, within thirty (30) business days by contacting Paulette Crain in the Member Relations Department at 1-800-348-0231, extension 40655.

In a second level appeal you may attend, via phone conference, a Member Appeals Committee meeting.   The committee is comprised of our Member Advocate RN, Director of Member Services, Medical Director and a Corporate Representative.  The Member Appeals Committee was established to provide a prompt review of the local Plan's decision when requested by a member regarding covered benefits or services. The MAC meeting is a non-confrontational forum held weekly that you may attend to present facts, ask questions, and voice objections to the local Plan's decision.  The committee will listen to your concerns and make a final determination.  You will be notified of this determination within five business days of the meeting.

44
(v. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**MAGISTRATE JUDGE JOHNSON**

**a) PLAINTIFFS**

# 01-7688

DAVID SOLOMON

**DEFENDANTS**

Aumed Inc. dba Aumed Health Plan

**b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**C)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Giovanni Ucrosia, Esq.
8100 W. University Drive #102
Ft. Lauderdale, Fl 33321

**CIV - DIMITROULEAS**

ATTORNEYS (IF KNOWN)

CIRCLE COUNTY WHERE ACTION AROSE:  DADE,  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE  HIGHLANDS

**BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

1 U.S. Government Plaintiff

X 3 Federal Question (U.S. Government Not a Party)

2 U.S. Government Defendant

4 Diversity (Indicate Citizenship of Parties in Item III)

CASE A 0:01cv 7688 WPD Johnson

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

X 1 Original Proceeding

2 Removed from State Court

3 Remanded from Appellate Court

4 Reinstated or Reopened

5 Transferred from another district (specify)

6 Multidistrict Litigation

7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury – Med Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 365 Personal Injury – Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | **A PROPERTY RIGHTS** | 450 Commerce/ICC Rates/etc. |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers Liability | | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 650 Airline Regs | 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 370 Other Fraud | 660 Occupational Safety/Health | 840 Trademark | 810 Selective Service |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 371 Truth in Lending | 690 Other | **B SOCIAL SECURITY** | 850 Securities/Commodities/Exchange |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | **A LABOR** | 861 HIA (1395ff) | 875 Customer Challenge 12 USC 3410 |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 862 Black Lung (923) | 891 Agricultural Acts |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 863 DIWC/DIWW (405(g)) | 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | 864 SSID Title XVI | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence | 730 Labor/Mgmt. Reporting & Disclosure Act | 865 RSI (405(g)) | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment | **HABEAS CORPUS:** | 740 Railway Labor Act | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Torts to Land | 444 Welfare | 535 Death Penalty | | 871 IRS – Third Party 26 USC 7609 | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 440 Other Civil Rights | 540 Mandamus & Other | 791 Empl. Ret. Inc. Security Act | | 890 Other Statutory Actions |
| 290 All Other Real Property | | 550 Civil Rights | | | OR B |
| | | 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

Declaratory Relief under ERISA

**VII. REQUESTED IN COMPLAINT:**

CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  YES  X NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions)

JUDGE _____  DOCKET NUMBER _____

DATE  10-26-01

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # ___  52375  AMOUNT 150 00  APPLYING IFP 10/30/01  JUDGE ___  MAG. JUDGE ___

OCT-24-2001  04:01PM  FROM-CAPLAN CAPLAN & KAYE  +9544624952  T-686  P.001/002  F-358